**Michigan Supreme Court**
**Lansing, Michigan 48909**

# Opinion

Chief Justice
Maura D. Corrigan

Justices
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Clifford W. Taylor
Robert P. Young, Jr.
Stephen J. Markman

**FILED DECEMBER 18, 2001**

MUSKEGON AREA RENTAL ASSOCIATION,
ROGER NIELSON, and ARTHUR JASICK,

    Plaintiffs-Appellees,

v

                        No. 118416

CITY OF MUSKEGON,

    Defendant-Appellant.

_____

PER CURIAM

A Muskegon city ordinance provides that before a residential dwelling may be rented, all past due property taxes on the property must be paid. The plaintiffs, who are owners of rental property within the city, brought this action challenging the validity of the ordinance on various grounds. The circuit court granted summary disposition for the city on all the plaintiffs' claims, but the Court of Appeals reversed in part, finding that the ordinance violated the Equal Protection Clauses of US Const, Am XIV, and Const 1963, art 1, § 2.

We conclude that the ordinance does not violate equal protection guarantees, reverse the judgment of the Court of Appeals in part, and reinstate the judgment of the Muskegon Circuit Court.

I

The city of Muskegon enacted a property maintenance code that sets forth the maintenance standards for all existing structures, new structures, and additions to existing structures.[1] The code also requires a property owner to

---

[1] The purpose of the property maintenance code is stated in Muskegon Ordinance § 4-61:

> (b) *Purpose*. The purpose of this code is to protect the public health, safety and welfare in buildings intended for human habitation and accessory structures as hereafter provided by:
>
> (1) Establishing minimum standards for exterior property areas, exterior structure, interior structure, basic facilities, light and ventilation, occupancy requirements and fire safety. These standards are designed to be reasonably high but, at the same time, practical and attainable and should not be interpreted as a guarantee to the purchaser.
>
> (2) Fixing the responsibilities of owners, operators and occupants of every building or structure used or intended for commercial or residential use or occupancy, in whole or in part.
>
> (3) Provide for administration, enforcement and penalties.
>
> The provisions of this chapter shall apply to all existing structures. Any new building construction or additions to existing structures in the city must comply with the requirements of the building code as amended. The minimum standards required under this code are designed to prevent
> (continued...)

2

obtain a certificate of compliance before the owner may rent the property.

On May 27, 1997, the city amended the ordinance to impose additional conditions for obtaining a certificate of compliance. Muskegon Ordinance § 4-83(b) was amended to provide:

> The City shall issue a certificate of compliance for a rental dwelling when the city finds that the rental dwelling, its units and accessory structures and yards comply with the standards set forth in this code; however, no certificate of compliance shall be issued until all of the following fees and debts to the city have been paid in full:
>
> (1) all previously billed property taxes;
>
> (2) all current or past due special assessment installments;
>
> (3) water or sewer bills outstanding;
>
> (4) all charges against the property for mowing, cleanup, weed or debris removal and similar charges by the city;
>
> (5) any fees, fines, penalties or debts of any sort arising from the provisions or enforcement of the Property Maintenance Code.

The issue in this appeal is whether § 4-83(b)(1) violates the principle of equal protection under the law.

---

[1] (...continued)
fire hazard, structural deterioration, inadequate light, air and heat and unsanitary and overcrowded conditions which constitute a menace to the safety, health and welfare of the occupants or to the surrounding area.

Plaintiff Muskegon Area Rental Association is an organization of about 145 members who own approximately 2,000 rental dwellings in the city of Muskegon. The individual plaintiffs are members of the association. Plaintiffs brought this action after the city attempted to enforce § 4-83(b)(1). Among other claims not before the Court, plaintiffs alleged that the ordinance violated their equal protection rights.

The plaintiffs argued that their equal protection rights were violated because other businesses who must register to do business in Muskegon are not required to pay real estate taxes before securing a certificate of registration under another ordinance.[2] After discovery, both sides moved for summary disposition under MCR 2.116(C)(10). The circuit court granted the city's motion. Regarding the equal protection claim, the court said:

> The 1990 Census of Population and Housing shows that 45% of Muskegon's 14,767 occupied housing units were rental units. . . . Undisputed sworn testimony demonstrates that a substantial majority of rental properties which are not current in their tax payments are deteriorated, and unsafe for human occupancy. . . . When they deteriorate, the City generally does not apply to receive these tax reverted properties. . . . Tax delinquency carries over to lack of interest in providing safe rentals for the public. . . . Finally, the City's tax collection percentage is lower than the majority of Michigan municipalities. This results in higher interest costs when the City borrows or issues bonds. . . .

---

[2] See Ordinance 1166, adopted August 11, 1998, amending Chapter 5 of the Muskegon Code of Ordinances.

At oral argument, the parties explored the link between the stated goals and the ordinance. Plaintiff's counsel argued there was little or no connection between fiscal responsibility and providing suitable housing. A landlord could be fiscally responsible and provide horrific housing. One could provide exemplary rental housing and owe delinquent taxes. The Court is, however, satisfied that the City has established the requisite connection. In any event, it is not for this Court to second guess local governing bodies absent a showing that the body was arbitrary or capricious. *Kropf v City of Sterling Heights*, 391 Mich [139, 161]; 215 NW2d 179 (1974). [Circuit Court opinion issued January 19, 1999, pp 8-9.]

## III

The plaintiffs appealed, and the Court of Appeals affirmed the circuit court decision on all grounds except the equal protection claim.[3] The majority noted that an ordinance is presumed constitutional and that the burden is on the party challenging the ordinance to show that it is not rationally related to a legitimate governmental interest. In finding a violation of the Equal Protection Clauses of the Michigan and U. S. Constitutions, the Court of Appeals majority reasoned as follows:

We utilize the test set forth in *Alexander v Detroit*, 392 Mich 30, 35-36; 219 NW2d 41 (1974), a case involving a constitutional attack on a city refuse collection ordinance. This test contains two prongs: (1) whether the ordinance's classifications are based on natural distinguishing characteristics and whether the classifications bear a reasonable relationship to the object of the ordinance and (2) whether all persons of the same class are included and affected alike or whether immunities or privileges are extended to an

---

[3] 244 Mich App 45; 624 NW2d 496 (2000).

5

arbitrary or unreasonable class while denied to others of a like kind. Accord, *Brittany Park Apartments* [*v Harrison Charter Twp,* 432 Mich 798; 443 NW2d 161 (1989)]*, supra*, p 804.

> [T]he problem here is that the ordinance treats rental property owners differently from other businesses. Other businesses (nonrental properties) are required to obtain a certificate of registration and one of the prerequisites for obtaining such a certificate is that all outstanding debts to defendant be paid, *except* real property or income taxes. Muskegon Code of Ordinances, § 5-9.6. Thus, defendant has created a subset of businesses—the owners of rental dwelling properties—and treats them entirely differently than it treats other, nonrental property businesses.

> We hold that defendant's ordinance violates the guarantee of equal protection because it violates the second prong of the test set forth in *Alexander*. The ordinance does not include and affect all persons of the same class (businesses) and extends immunities or privileges to an arbitrary class (businesses who are not owners of rental properties and who are immune from the requirement of paying real property or income taxes before obtaining a certificate of registration), while denying the exact immunities and privileges to others of a like kind (businesses who are owners of rental properties and are required to pay all previously billed property taxes before obtaining a certificate of compliance). Consequently, we find that defendant's ordinance impermissibly treats certain components of the same class (businesses) differently. [244 Mich App 55-57 (emphasis in original).]

The dissent disagreed with the majority's equal protection analysis.

> The purpose of defendant treating rental property businesses differently than other businesses is apparent. By requiring payment of taxes "up front," before units can be rented, defendant seeks to reduce the fiscal, safety, health, and welfare problems that result disproportionately from rental properties.

6

The majority states that defendant's position regarding the rational basis for this classification scheme "is not supported in any way by record evidence." *Ante* at 57. I first note that the majority's analysis in this regard ignores the presumption of constitutionality that defendant's ordinance enjoys and the corresponding heavy burden of proof that plaintiffs must bear to show that the ordinance is unconstitutional. In effect, the majority places the burden of proof on defendant, as if this is a "strict scrutiny" case. The question here is not whether defendant has proved the rational basis for the classification scheme. The question is whether plaintiffs have come forward with evidence sufficient to show defendant's ordinance to be arbitrary and wholly unrelated to a legitimate government purpose.

I conclude they have not. There has been no showing that rental properties are not disproportionately tax delinquent compared to properties owned by other businesses. In fact, the record includes admissions by members of the Muskegon Area Rental Association that allowing rental properties to become delinquent is a common business practice. Defendant has articulated reasons why its failure to promptly receive taxes when due causes fiscal problems, and plaintiffs have offered no evidence to suggest that those problems do not result from tax delinquencies. Thus, if the purpose of the classification scheme here was simply to encourage prompt payment of taxes for fiscal reasons, by enacting a special penalty against a class of property owners who disproportionately are tax delinquent, the classification would pass constitutional muster.

However, defendant has articulated other reasons for treating rental property owners differently than other businesses. In sum, defendant's position is that the deteriorating conditions of residential properties are commonly the result of or exacerbated by the failure to pay taxes when due. This seems a common sense conclusion to anyone familiar with "urban blight." It is certainly at least "rational speculation" on defendant's part. See *Alexander v Merit Systems Protections Bd*, 165 F3d 474, 484 (CA 6, 1999) ("legislative choice is not subject to courtroom factfinding and may be based on rational speculation unsupported by evidence or empirical

7

data"). Again, plaintiffs have not shown that there is no relationship between housing deterioration and tax delinquency or otherwise proved that the classification scheme at issue here has no "rational basis" in this regard. [244 Mich App 61-62.]

The city filed an application for leave to appeal to this Court.[4]

IV

We review de novo a trial court's decision to grant or deny summary disposition. *Hazle v Ford Motor Co*, 464 Mich 456, 461; 628 W2d 515 (2001). After reviewing the evidence in the light most favorable to the nonmoving party, the court must grant summary disposition if there is no genuine issue of material fact. *Hazle*, *supra* at 461.

V

The tests applicable to challenges based on the Equal Protection Clauses are well established and were recently summarized in *Crego v Coleman*, 463 Mich 248, 259; 615 NW2d 218(2000):

> When a party raises a viable equal protection challenge, the court is required to apply one of three traditional levels of review, depending on the nature of the alleged classification. The highest level of review, or "strict scrutiny," is invoked where the law results in classifications based on "suspect" factors such as race, national origin, or ethnicity, none of which are implicated in this case. *Plyler v Doe,* 457 US 202, 216-217; 102 S Ct 2382; 72 L Ed 2d 786 (1982). Absent the implication of these highly suspect categories, an equal protection challenge requires either

---

[4] The plaintiffs did not cross-appeal on the issues decided against them by the Court of Appeals.

rational-basis review or an intermediate, "heightened scrutiny" review.

In this case, the categorization does not involve suspect classifications, to which "strict scrutiny" analysis applies, nor does it involve classifications to which the courts apply a heightened level of scrutiny, such as illegitimacy and gender. *Id*. at 260. Thus, the ordinance is reviewed under the rational-basis test. As we explained in *TIG Ins Co v Treasury Dep't*, 464 Mich 548, 557-558; 629 NW2d 402 (2001):

> "Rational basis review does not test the wisdom, need, or appropriateness of the legislation, or whether the classification is made with 'mathematical nicety,' or even whether it results in some inequity when put into practice." *Crego v Coleman,* 463 Mich 248, 260; 615 NW2d 218 (2000). Rather, it tests only whether the legislation is reasonably related to a legitimate governmental purpose. The legislation will pass "constitutional muster if the legislative judgment is supported by any set of facts, either known or which could reasonably be assumed, even if such facts may be debatable." *Id*. at 259-260. To prevail under this standard, a party challenging a statute must overcome the presumption that the statute is constitutional. *Thoman v Lansing,* 315 Mich 566, 576; 24 NW2d 213 (1946). Thus, to have the legislation stricken, the challenger would have to show that the legislation is based "solely on reasons totally unrelated to the pursuit of the State's goals," *Clements v Fashing,* 457 US 957, 963; 102 S Ct 2836; 73 L Ed 2d 508 (1982), or, in other words, the challenger must "negative every conceivable basis which might support" the legislation. *Lehnhausen v Lake Shore Auto Parts Co,* 410 US 356, 364; 93 S Ct 1001; 35 L Ed 2d 351 (1973).

VI

In this case, the city has advanced legitimate objectives for its ordinance, including encouraging prompt payment of

9

property taxes to minimize the fiscal problems associated with delinquent taxes due on rental properties and promoting appropriate maintenance of rental properties. Thus, plaintiffs must show that the ordinance is not rationally related to those objectives. We conclude that the plaintiffs have not met that burden for the reasons articulated in the Court of Appeals partial dissent.

The Court of Appeals majority explained its finding of an equal protection violation by stating that the ordinance

> does not include and affect all persons of the same class (businesses) and extends immunities or privileges to an arbitrary class (businesses who are not owners of rental properties and who are immune from the requirement of paying real property or income taxes before obtaining a certificate of registration), while denying the exact immunities and privileges to others of a like kind (businesses who are owners of rental properties and are required to pay all previously billed property taxes before obtaining a certificate of compliance). [244 Mich App 56-57.]

This analysis is incomplete. The majority concludes that there is an equal protection violation simply because two classes of businesses are treated differently. If that were all that is required, then virtually any classification could be successfully challenged. The rational basis test requires that the plaintiff also demonstrate that there is no rational basis for the challenged distinction. As to that consideration, the Court of Appeals majority said:

> [W]e find that plaintiffs have met their burden of showing that the classification established by the ordinance is not rationally related to a legitimate governmental interest

10

because the ordinance subjects a subset of businesses to a financial requirement to operate and does not include or affect the entire class, thus extending a privilege to a certain set of businesses while denying that privilege to another (rental dwellings). Accordingly, we find this distinction to be a violation of equal protection. [244 Mich App 57 (emphasis added).]

Manifestly, this conclusion merely repeats the majority's previous observation that the city has treated these properties differently than others, and fails to analyze the reasons supporting that legislative decision.

As noted in the dissent, the plaintiffs have not disputed the city's claims that residential rental properties are disproportionately delinquent compared to other classes of property and that the failure to receive taxes when due causes the city fiscal problems. Nor did the plaintiffs refute the city's explanation of the distinction between owners of residential rental properties who must obtain certificates of compliance pursuant to the property maintenance code and owners of other businesses who must obtain certificates of registration. By encouraging timely payment of taxes, interest and penalties are avoided. This, in turn, frees funds to maintain the property, thereby promoting the health, safety, and welfare of residents.[5] These concerns do not

---

[5] Interestingly, in its analysis of the plaintiff's due process claim, the Court of Appeals majority found this justification a rational basis for the ordinance:

> [W]e agree with defendant that requiring rental owners to pay delinquent property taxes
> (continued...)

11

necessarily apply to other businesses, which are more likely to be tenants rather than owners of leased property.

Although legitimate arguments can be made regarding the wisdom of the approach taken by the city in addressing the problems of delinquent taxes and the failure to maintain residential rental property, it is not for the courts to substitute their judgment for that of legislative bodies on such questions of economic and social policy. We affirm that as long as the ordinance is rationally related to the city's legitimate purposes, it does not violate equal protection guarantees.

VII

Because the plaintiffs have not overcome their considerable burden of demonstrating that the city lacked any

[5] (...continued)
before receiving a certificate of compliance is reasonably related to defendant's stated purpose of protecting the safety, health, and welfare of those inhabiting dwellings and of eliminating deteriorated dwellings from the city. Uncontroverted affidavits of city officials indicate that houses in the city that revert to the state because of tax delinquency are normally rental properties and are usually dilapidated when they do revert to the state.

Accordingly, *we conclude that there is a rational relationship between the requirement that any delinquent property taxes be paid before a certificate of compliance can be issued for a rental dwelling unit and the city's legitimate interest in providing safe and habitable rental dwellings to its citizens.* Consequently, defendant's ordinance does not violate the substantive due process rights of plaintiffs. [244 Mich App 54-55 (emphasis added).]

12

rational basis for its ordinance, the city was entitled to summary disposition on the equal protection claim. Accordingly, we reverse the judgment of the Court of Appeals in part, and reinstate the judgment of the Muskegon Circuit Court.

CORRIGAN, C.J., and CAVANAGH, WEAVER, KELLY, TAYLOR, YOUNG, and MARKMAN, JJ., concurred.