ESTES v TITUS

Docket No. 261968. Submitted November 8, 2006, at Grand Rapids. Decided December 21, 2006, at 9:10 a.m.

Jan K. Estes, as personal representative of the estate of her deceased husband, Douglas D. Estes, brought a wrongful death action in the Kalamazoo Circuit Court against Jeff E. Titus, who had been convicted of first-degree murder for the death. After the plaintiff filed this action, the defendant's wife, Julie L. Titus, now known as Julie Swabash, filed for divorce. The divorce judgment, entered by consent, awarded Swabash substantially all the marital assets. The plaintiff sought to intervene in the divorce action to argue that the property settlement constituted a fraud upon the defendant's creditors, such as herself, but the family division of the circuit court, Patricia N. Conlon, J., denied her motion. The plaintiff did not appeal that denial. After the court in this action, J. Richardson Johnson, J., awarded the plaintiff a judgment against the defendant, however, the plaintiff requested that the court subpoena Swabash to appear for discovery regarding the marital assets and to show cause why she should not be made a party to this case. The plaintiff also requested that the court enjoin Swabash from transferring the property, arguing that the defendant's transfer of marital property to Swabash was fraudulent under the Uniform Fraudulent Transfer Act (UFTA), MCL 566.31 *et seq.* Judge Johnson ultimately denied the plaintiff's request to add Swabash as a party defendant, concluding that the plaintiff was effectively asking him to undo a judgment entered by another judge. The plaintiff appealed by leave granted.

The Court of Appeals *held*:

1. The trial court did not err when it failed to set aside the division of property in the divorce judgment. Under MCR 2.613(B), Judge Johnson lacked the authority to set aside or modify the property settlement in the divorce judgment that Judge Conlon, a coequal judge, had entered. Any order granting relief under the UFTA, however, with respect to property that the defendant transferred pursuant to the divorce judgment, would not modify that judgment; rather, it would operate against persons and property within the trial court's jurisdiction. In granting the

divorce, the family division of the circuit court did not gain exclusive jurisdiction over the marital property. The plaintiff was not a party to the divorce proceeding, and her right to the property was not determined in it.

2. The plaintiff sufficiently established a claim for relief under the UFTA. A transfer of property from one spouse to the other pursuant to MCL 552.401 as part of a property settlement incorporated in a divorce judgment may be a "transfer" to which the UFTA applies, as MCL 566.31(*l*) broadly defines that term. Furthermore, the plaintiff alleged sufficient facts to support a justiciable claim that the agreed-upon property settlement constituted a fraudulent transfer by the defendant, made with the actual intent to defraud her as a judgment creditor, MCL 566.34(1)(a), despite the fact that the transfer occurred before the plaintiff reduced her wrongful death claim to judgment. In particular, the plaintiff presented evidence that the defendant made the transfer to an insider, his spouse, and that he and Swabash agreed to the terms of the divorce judgment, which awarded substantially all his assets to Swabash and rendered him insolvent, after the plaintiff filed suit against him. MCL 566.34(2)(a), (d), (e), and (i).

3. The trial court erred by failing to make Swabash a party to the plaintiff's supplemental proceeding under the UFTA to determine the plaintiff's and Swabash's interests in the disputed property that Swabash received from the defendant. But for the fraudulent transfers, the family division of the circuit court would likely have divided the marital assets fairly and equitably, and the defendant, who is a judgment debtor, "may have" an interest in a portion of that property under MCL 600.6128(1). If the plaintiff proves her UFTA claim, she may be entitled to relief regarding property in Swabash's possession, including an order voiding some of the transfers made pursuant to the divorce settlement. Swabash is a "person claiming adversely to the judgment debtor" under MCL 600.6128(2). That statute and MCL 2.205(A) required the trial court to join Swabash as a party defendant.

Reversed and remanded for further proceedings.

O'CONNELL, P.J., concurring in part and dissenting in part, agreed that the trial court lacked the authority to set aside or modify the divorce judgment, but disagreed that the court could make Swabash a party to this lawsuit or that the plaintiff can recover any of the marital assets by way of a collateral attack on a valid divorce judgment. The plaintiff did not appeal the denial of her motion to intervene in the divorce proceedings. Her remedy was to appeal that denial, not to attempt to add Swabash as a party to another lawsuit. Moreover, the plaintiff did not include among

the questions presented in her appellate brief the issue of the trial court's failure to add Swabash. Thus, it is inappropriate to review that issue. The trial court's decision should be affirmed.

1. JUDGES — POWERS OF COEQUAL JUDGES — SETTING ASIDE OR MODIFYING ORDERS.

A judge does not have jurisdiction to review, modify, or vacate a judgment of a coequal judge unless the judge is acting as the coequal judge's authorized successor or substitute or is otherwise empowered to act (MCR 2.613[B]).

2. FRAUDULENT CONVEYANCES — UNIFORM FRAUDULENT TRANSFER ACT — DIVORCE — JOINDER OF PARTIES.

A transfer of property from one spouse to the other as part of a property settlement incorporated in an uncontested divorce judgment may be a fraudulent transfer under the Uniform Fraudulent Transfer Act with respect to a creditor of the transferring spouse (MCL 566.31(*l*), 566.34).

*Butler, Durham & Toweson — PLLC* (by *H. van den Berg Hatch*) for Jan K. Estes.

*Kreis, Enderle, Callander & Hudgins, P.C.* (by *Russell A. Kreis* and *Jeffrey M. Wesselhoff*), for Julie L. Swabash.

Before: O'CONNELL, P.J., and WHITE and MARKEY, JJ.

MARKEY, J. In this wrongful death action, plaintiff appeals by leave granted the trial court's order denying her motion to add defendant's former spouse as a party for purposes of conducting an evidentiary hearing to inquire into the fairness of the property division approved in a divorce judgment entered while this action was pending. Plaintiff argues that, to the extent the marital property settlement exceeded a fair and equitable division, it was a fraudulent transfer within the meaning of the Uniform Fraudulent Transfer Act (UFTA), MCL 566.31 *et seq*. We agree and reverse.

Two days into the 1990 firearm deer-hunting season, Douglas Estes and another hunter were found shot to death in the Fulton State Game Area in Kalamazoo County. More than a decade later, a police cold-case homicide investigation resulted in the arrest and conviction of defendant Jeff Titus for two counts of first-degree murder. He was sentenced on August 20, 2002, to mandatory life in prison. This Court affirmed defendant's convictions.[1]

Plaintiff Jan Estes, who was Douglas Estes's wife and is the personal representative of his estate, filed this wrongful death action, MCL 600.2922, on September 23, 2002.

Julie Titus, defendant's spouse, filed for divorce on November 12, 2002. Kalamazoo Circuit Judge Patricia N. Conlon entered a divorce judgment dissolving the Tituses' marriage on March 10, 2003.[2] Defendant and Julie agreed on the terms of the divorce judgment, which awarded Julie custody of the couple's 17-year-old daughter. Regarding defendant's child-support obligation, the judgment provided:

> IT IS FURTHER ORDERED AND ADJUDGED that due to the fact the Defendant is currently incarcerated in a state prison, has not contributed support for the minor child preceding or during, nor is it anticipated he will contribute hereafter, the award of property herein made is intentionally not congruent or equal and the award of additional property to the Plaintiff is in lieu of his child support obligation, considering the term of the contemplated incarceration and the age of the child and, accordingly, no award is made.

---

[1] *People v Titus*, unpublished opinion per curiam of the Court of Appeals, issued February 19, 2004 (Docket No. 243642).

[2] Julie Titus remarried after she divorced defendant and is now Julie Swabash. To avoid confusion, we refer to her by her first name.

Indeed, Julie was awarded substantially all the marital assets.

On March 24, 2003, plaintiff filed a motion under MCR 2.209(A)(3) to intervene in the divorce proceedings for the purpose of arguing that the property-settlement provisions constituted a fraud upon defendant's creditors, such as herself, and were inequitable. Judge Conlon denied the motion on May 19, 2003, without an evidentiary hearing on the merits of plaintiff's claims of fraud and inequity. Plaintiff did not appeal this ruling.

On the same day that Judge Conlon denied plaintiff's motion to intervene in the Titus divorce proceedings, plaintiff filed a motion in the trial court in this case to enjoin defendant from transferring, selling, encumbering, or disposing of any marital assets pending the outcome of the wrongful death action. Plaintiff argued that defendant, in an attempt to avoid any collection on a potential wrongful death judgment, improperly agreed to transfer almost all his marital assets to Julie in the divorce proceedings. Plaintiff noted that her motion to intervene in the divorce proceeding, was then pending before the family division of the circuit court, and she argued that injunctive relief was necessary to ensure that she could collect any judgment arising from this action. Defendant, acting in propria persona, filed an objection to plaintiff's motion on the bases that the property division in the divorce judgment was not an improper transfer of property and that the trial court lacked the authority to set aside the divorce judgment in a separate proceeding. The trial court granted plaintiff's motion for a preliminary injunction, enjoining defendant from transferring, encumbering, or disposing of any marital assets awarded to him.

On October 7, 2004, four months after a bench trial, the trial court issued its final opinion and order in this

case. The trial court concluded that defendant was liable for the wrongful death of plaintiff's decedent, Douglas Estes. On October 22, 2004, the trial court entered a judgment against defendant, awarding plaintiff $550,000.

On January 20, 2005, in an attempt to collect her judgment, plaintiff asked the trial court to subpoena Julie to appear for discovery regarding the marital assets and to show cause why she should not be made a party to this case pursuant to MCL 600.6128. Plaintiff also requested that the trial court enjoin Julie from transferring any property that defendant might have an interest in and conduct a hearing to determine defendant's rights to the marital property. Plaintiff contended that defendant's transfer of marital property to Julie pursuant to the divorce judgment was fraudulent with respect to the plaintiff under MCL 566.34 and 566.35 because the property settlement was made with the actual intent to defraud plaintiff, was made without defendant's receiving reasonable equivalent value in exchange for the transfer, and was made when defendant reasonably should have believed that he would incur debts beyond his ability to pay when they came due. Plaintiff also asserted that the division of the marital property was inequitable and deprived her of the ability to collect any substantial portion of her judgment.

The trial court issued a restraining order and an order to show cause on January 21, 2005, requiring Julie to appear at a hearing to be held on February 7, 2005. Specifically, the trial court issued a subpoena requiring Julie to appear before it and testify regarding assets in her possession in which defendant had an interest. The court also scheduled the February 7, 2005, hearing for Julie to show cause why she should not be

made a third party to this case. Finally, the trial court enjoined Julie from transferring, disposing of, or interfering with any property in which defendant had or might have an interest, pending further order of the court.

Through counsel, Julie filed an answer and memorandum on February 3, 2005, in response to plaintiff's motion regarding her. Julie argued that plaintiff lacked standing to file a motion in the trial court to set aside the divorce judgment, that plaintiff did not timely file her motion to set aside the judgment as required by MCR 2.612, and that the trial court had no authority to overrule the family division of the circuit court in its determination that the divorce judgment was fair and equitable. Julie requested that the trial court quash the subpoena issued against her, dismiss the restraining order, and deny plaintiff's motion to add her as a third party to this action.

The trial court heard arguments of counsel at the scheduled show-cause hearing and expressed its reasoning regarding plaintiff's motions from the bench:

> In essence, the plaintiff in this case is asserting that the distribution of property in the divorce case works a fraud on her as a creditor. These claims are based on a series of statutes cited within the motion, including MCL 566.34 and 566.35, the fraudulent conveyance statute.

> * * *

> Now the property is divided in what appears to be, based on both the judgment and arguments here today, an unequal fashion. . . .

> Here, although the defendant in this case and in the divorce may have voluntarily signed off on the judgment, at least on its face there appears to be reasons for the unequal distribution authorized by the Court as it relates to the interests of the parties involved in the divorce case.

And while it was certainly foreseeable that he might have become liable in an ultimate civil judgment as a result of the death in the case before this Court, this also appears to be, at least on its face, a reasonable resolution of the marriage where one person is serving a life sentence and the other is seeking a divorce.

The Court . . . without prejudice . . . dissolves the restraining order, quashes the subpoena, declines to add Ms. Estes [sic: Julie] as a party in this case, as the Court has not been directed to any case or court rule that—or statute— that would justify that relief on the facts I've just outlined and declines to authorize further proceedings against Ms. Estes [sic: Julie] as it relates to the assets over which she attained control through the divorce proceedings.

I'm doing this without prejudice as I'm acting on the information available to me at this time. While I can understand the so-called equitable level why the plaintiff would be pursuing this relief, I'm not persuaded at the legal level that this Court has any authority to, in effect, undo a judgment entered by this court in another case through another judge; and that's really what I'm being asked to do.

The trial court effectuated its ruling through an order entered on February 16, 2005, which is the subject of the instant appeal. The order denied plaintiff's request to add Julie as a party defendant, dissolved the court's January 21, 2005, restraining order, and quashed the judgment-creditor discovery subpoena. Plaintiff moved for reconsideration, appending to her motion the affidavit of an attorney who opined that the Titus divorce judgment was unfair and inequitable and did not comply with the standards of Michigan law. The court denied the motion on March 11, 2005, concluding that plaintiff had merely reargued the same issues decided in the trial court's earlier ruling and, thus, had failed to demonstrate a palpable error justifying relief.

The issues plaintiff presents on appeal address the jurisdiction of the trial court and statutory interpreta-

tion, which are both questions of law that this Court reviews de novo. *Wengel v Wengel*, 270 Mich App 86, 91; 714 NW2d 371 (2006); *Reed v Reed*, 265 Mich App 131, 157; 693 NW2d 825 (2005).

Plaintiff first argues that the trial court erred when it failed to set aside the division of marital property included in the Tituses' divorce judgment. We disagree. We conclude that the trial court lacked authority to invoke its equitable powers to set aside or modify the divorce judgment entered by another circuit judge. MCR 2.613(B).

Plaintiff submits that the trial court erred when it failed to set aside the property-division portion of the Tituses' divorce judgment on the basis of fraud and equity. Essentially, plaintiff, a nonparty to the divorce action, argues that the property division in the divorce judgment was fraudulent and unfair because it awarded Julie substantially all the marital assets and left defendant with practically no assets against which plaintiff could collect her wrongful death judgment. Plaintiff maintains that the trial court should have used its power to invoke equity to set aside the property division in the divorce judgment. The only authority plaintiff cites to support her position is *Berg v Berg*, 336 Mich 284; 57 NW2d 889 (1953). That case addressed a situation in which a party to a divorce action allegedly concealed assets. The *Berg* Court opined, "If a fraud has been perpetrated on the court by concealment of facts affecting the property rights of the defendant, the court has inherent power to void its decree." *Id.* at 287. " 'There can be no doubt of the authority of a court of equity to relieve against fraud, even to the extent of setting aside its own decrees when founded thereon.' " *Id.* at 288, quoting *Raniak v Pokorney*, 198 Mich 567, 572; 165 NW 663 (1917).

Plaintiff's reliance on *Berg* for the proposition that one circuit judge may modify the judgment of another circuit judge when fraud is alleged is misplaced. Rather, *Berg* holds that a court has the inherent authority to correct one of *its own* judgments if the judgment was fraudulently obtained. *Berg* provides no authority at all for the proposition that a coequal court may void, vacate, or modify the judgment of another coequal court. Because plaintiff has not presented any authority to support her position, we need not address the issue further. *Prince v MacDonald*, 237 Mich App 186, 197; 602 NW2d 834 (1999). "[W]here a party fails to cite any supporting legal authority for its position, the issue is deemed abandoned." *Id.*

Nevertheless, we find that plaintiff's argument lacks legal merit. In general, proceedings in a divorce action are limited to the dissolution of the marriage and ancillary issues. *Reed, supra* at 157-158, citing *Berg, supra* at 288. Thus, the rights or claims of third parties may not be litigated in a divorce proceeding. *Reed, supra* at 158. More importantly, MCR 2.613(B) provides that one judge may not set aside, vacate, or stay the judgment of another judge unless acting as that judge's authorized successor or substitute or is "otherwise empowered" to act.

> A judgment or order may be set aside or vacated, and a proceeding under a judgment or order may be stayed, only by the judge who entered the judgment or order, unless that judge is absent or unable to act. If the judge who entered the judgment or order is absent or unable to act, an order vacating or setting aside the judgment or order or staying proceedings under the judgment or order may be entered by a judge otherwise empowered to rule in the matter. [MCR 2.613(B).]

MCR 2.613(B) is the latest codification of the long-standing rule in Michigan that a judge has no jurisdic-

tion to review, modify, or vacate the judgment of another coequal judge. This Court discussed the purpose of MCR 2.613(B), and its predecessor, GCR 1963, 529.2, in *Huber v Frankenmuth Mut Ins Co*, 160 Mich App 568, 573; 408 NW2d 505 (1987):

> The policy behind the rule requiring litigants to appear before the judge who made the judgment or order is that the original judge is best qualified to rule on the matter. In addition, such a rule tends to preserve the dignity and stability of judicial action by preventing unhappy litigants from turning to other trial judges to have the judgment "reversed" and by preventing "judge shopping." [Citation omitted.]

See, also, *Dodge v Northrop*, 85 Mich 243, 245; 48 NW 505 (1891) ("Courts of concurrent jurisdiction cannot set aside or modify the orders and decrees of other courts of like jurisdiction.").

Although plaintiff argues that the trial court erred when it declined to set aside the property-settlement portion of the divorce judgment with respect to her, MCR 2.613(B) prohibits a judge from setting aside or vacating a judgment entered by another judge except under the limited circumstances described in that court rule. Nothing in the record supports a finding that the trial court could have set aside the divorce judgment that the family division of the circuit court entered. Plaintiff provides no evidence indicating that the family division judge was absent or unable to act, nor does she provide evidence indicating that the trial court was otherwise empowered to make an equitable ruling regarding the terms of the divorce judgment. Applying MCR 2.613(B), we conclude the trial judge lacked the authority to set aside or modify the property settlement in the divorce judgment entered by another coequal judge.

Next, plaintiff argues that the trial court erred because she has stated a valid claim under the UFTA. She asserts that the divorce judgment was only a pretext for the fraudulent transfer of assets from defendant to Julie in order to prevent plaintiff from collecting her wrongful death judgment. Plaintiff contends she can prove that the property settlement in the divorce judgment was itself a fraudulent transfer within the meaning of the UFTA and that the trial court had the authority to add Julie as a party to this action and to grant appropriate relief under the UFTA if plaintiff successfully established that the divorce property settlement was a fraudulent transfer. We agree.

We first reject the trial court's premise that it lacked the authority to, "in effect, undo a judgment entered by this court in another case through another judge[.]" Although we agree that MCR 2.613(B) precludes the trial court from modifying the divorce judgment that another court entered, if the UFTA applies, the trial court has jurisdiction under that act to grant relief with respect to property that defendant transferred pursuant to the agreed-upon division of marital property incorporated into the terms of the divorce judgment. Any orders the trial court might enter under the UFTA would not operate to modify the divorce judgment; they would operate against persons and property within the trial court's jurisdiction.

Although in granting the divorce judgment the family division of the circuit court exercised jurisdiction over the Tituses' martial property, it did not thereby gain exclusive jurisdiction over it. Our Supreme Court discussed the doctrine of prior exclusive jurisdiction when addressing competing claims by prosecutors in Oakland and Macomb counties to proceed with a forfeiture of the same property in their respective counties.

*In re Forfeiture of Certain Personal Prop*, 441 Mich 77; 490 NW2d 322 (1992). The Court observed that the doctrine of prior exclusive jurisdiction had long been recognized in Michigan. *Id.* at 85. The doctrine provides that "once a court has exercised its jurisdiction over an item, other courts 'of co-ordinate authority' may not interfere with the first court's action." *Id.* (citation omitted). But the Court noted that the doctrine "is not without its limits." *Id.* "For a court to possess 'co-ordinate authority' the 'two proceedings must be in all respects identical, as to the identity of the parties, the subject matter involved, the nature of the remedies, and the character of the relief sought.' " *Id.*, quoting *Detroit Trust Co v Manilow*, 272 Mich 211, 214-215; 261 NW 303 (1935). Thus, as in this case, "[w]here the two proceedings are not identical, there is no conflict of jurisdiction." *In re Forfeiture, supra* at 85.

Furthermore, MCR 2.613(B) does not preclude the trial court from granting relief under the UFTA. In *Ocwen Fed Bank, FSB v Int'l Christian Music Ministry, Inc*, unpublished opinion per curiam of the Court of Appeals, issued July 8, 2004 (Docket No. 249081), this Court considered whether MCR 2.613(B) precluded the St. Clair Circuit Court from granting relief to the bank in a quiet-title action when the Wayne Circuit Court had entered an order of conveyance, ironically under the UFTA, to the International Christian Music Ministry, Inc. (ICMM). The bank held a mortgage in the subject property and, after default, foreclosed. ICMM claimed that certain transfers to the bank's mortgagor were fraudulent, so it obtained the order of conveyance in the Wayne Circuit Court. The bank was not made a party to the Wayne Circuit Court action and did not know of ICMM's interest in the property "until after the mortgagor's equity of redemption period had ended and [the bank] was attempting to recover the property."

*Id.*, slip op at 2. This Court held that the bank's action to quiet title in the St. Clair Circuit Court was precluded because "the St. Clair Circuit Court did not have the authority to render an order from the Wayne Circuit Court null and void contrary to MCR 2.613(B)." *Id.*, slip op at 4. But, in reversing this Court, our Supreme Court disagreed. 472 Mich 923 (2005). The Court observed that the bank "was not a party to the prior action in the Wayne Circuit Court, and that proceeding did not determine [the] plaintiff's right to the property." *Id.* Consequently the St. Clair Circuit Court judgment quieting title in the bank "did not have the effect of setting aside or rendering 'null and void' the order of the Wayne Circuit Court. Rather, under the facts of this case, the St. Clair Circuit Court had plenary authority pursuant to MCL 600.2932 to vest title in the plaintiff." *Id.*

Likewise here, plaintiff was not a party to the divorce proceedings, and her right to the property at issue was not determined. Thus, if the UFTA may be applied to transfers of property made pursuant to the marital-property division, any orders the trial court might enter to enforce a ruling in that regard would not contravene MCR 2.613(B) by voiding, nullifying, or setting aside the divorce judgment.

Plaintiff claims that, to the extent defendant transferred his interests in marital property to Julie under the divorce judgment in excess of a "fair and equitable" distribution, the transfers of property were fraudulent under the UFTA. Plaintiff contends that the trial court should have held an evidentiary hearing to identify the marital assets in which defendant would have had an interest but for the consent judgment. Whether a transfer of marital property pursuant to a settlement incorporated in an uncontested divorce judgment may be a

fraudulent transfer under the UFTA with respect to a creditor of the transferring spouse is an issue of first impression in Michigan. We conclude that it may be a fraudulent transfer.

The first issue in answering this question is whether a divorce judgment may constitute a "transfer" within the meaning of that term in the UFTA. A panel of this Court in *Hubers v Miller, Canfield, Paddock & Stone, PLC*, unpublished opinion per curiam of the Court of Appeals, issued April 11, 2006 (Docket No. 258746), addressed a similar question under the Uniform Fraudulent Conveyance Act (UFCA), former MCL 566.11 to 566.23.[3] In *Hubers*, the plaintiff sued Donald Ritsema for fraud. The plaintiff attempted to add Ritsema's former spouse, Lynnette Jach, as a defendant, asserting that the divorce judgment was a fraudulent conveyance within the meaning of the UFCA because it allowed Jach to retain a condominium that had always been her sole property. The trial court in the fraud case dismissed the plaintiff's claims under the UFCA. The plaintiff's counsel—Miller, Canfield, Paddock & Stone, PLC—failed to timely perfect an appeal. The plaintiff then brought a malpractice action against his former counsel. This Court agreed with the law firm that an appeal would not have been successful because the condominium was never an asset of Ritsema, the debtor. It had always belonged solely to Jach. *Hubers, supra*, slip op at 2-3. The panel observed that, at most, Ritsema had a potential interest in the condominium because it was a marital asset, but the interest was never actualized. *Id.*, slip op at 3. Moreover, the panel observed that a divorce judgment would not affect a "conveyance" as defined in the UFCA: " 'every payment of money, as-

---

[3] 1998 PA 434 both repealed the UFCA and enacted the UFTA, effective December 30, 1998.

signment, release, transfer, lease, mortgage or pledge of tangible or intangible property, and also the creation of any lien or encumbrance.' " *Id.,* quoting former MCL 566.11.

The *Hubers* panel rejected the plaintiff's reliance on *In re Fordu,* 201 F3d 693 (CA 6, 1999), a bankruptcy case that held that a transfer of a marital asset from one spouse to the other as part of a divorce decree may be a fraudulent transfer under the Ohio version of the UFTA. Thus, the plaintiff in *Hubers* cited *Fordu* for the proposition that a divorce judgment may be a "conveyance" within the meaning of that term in the UFCA. The *Hubers* panel distinguished *Fordu* both because the spouse in that case relinquished an interest in property and because the *Fordu* court applied the expansive, broad, inclusive UFTA definition of "transfer" rather than the more restricted UFCA definition of "conveyance." *Hubers, supra,* slip op at 3. We agree that "transfer" is broadly defined in the UFTA as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease, and creation of a lien or other encumbrance." MCL 566.31($l$). We also agree with *Fordu* that a transfer of property from one spouse to another as part of a property settlement incorporated in a divorce judgment may be a "transfer" as that term is broadly defined in the UFTA.

MCL 552.401 governs the division of property in a divorce proceeding and states:

The circuit court of this state may include in any decree of divorce or of separate maintenance entered in the circuit court appropriate provisions awarding to a party all or a portion of the property, either real or personal, owned by his or her spouse, as appears to the court to be equitable under all the circumstances of the case, if it appears from

the evidence in the case that the party contributed to the acquisition, improvement, or accumulation of the property. The decree, upon becoming final, shall have the same force and effect as a quitclaim deed of the real estate, if any, or a bill of sale of the personal property, if any, given by the party's spouse to the party. [MCL 552.401.]

A court presiding over an action for divorce has the power to divide the marital property and award this property to the respective parties in the divorce action. When the judgment is final, each party is divested of his or her former interest in property awarded to the other pursuant to the terms of the judgment. By its plain terms, MCL 552.401 describes a "mode" by which the parties to a divorce "dispos[e] or part[] with an asset or an interest in an asset" with respect to marital assets. MCL 566.31(*l*). Consequently, we conclude that because a property division in a divorce judgment is a mode or method of disposing of or parting with an asset, it may be a "transfer" within the meaning of MCL 566.31(*l*).

Our interpretation of the UFTA is consistent with that of courts in other jurisdictions that have adopted the UFTA. In reviewing caselaw from other jurisdictions, we note that Michigan's version of the UFTA was adopted without substantive changes from the model UFTA drafted by the National Conference of Commissioners on Uniform State Laws. See LaBine, *Michigan's adoption of the Uniform Fraudulent Transfer Act: An examination of the changes effected to the state of fraudulent conveyance law*, 45 Wayne L R 1479, 1481 (1999). Oregon and Oklahoma adopted versions of the UFTA that are substantively identical to the version of the UFTA that Michigan adopted. Compare MCL 566.31 to 566.42 with Or Rev Stat 95.200 to 95.310 and 24 Okla Stat 112 to 123.

The Oregon Court of Appeals was faced with facts similar to those in the present case in *Greeninger v*

*Cromwell*, 140 Or App 241; 915 P2d 479 (1996). The court considered a sexual-assault victim's claim that the property division in a stipulated divorce judgment should be set aside with respect to her because it constituted a fraudulent transfer under Oregon's UFTA. The defendant, Linwood Cromwell, was convicted of raping the plaintiff and was sentenced to three years' imprisonment. *Id.* at 243. In March 1990, after Linwood was convicted, the plaintiff filed a civil complaint alleging sexual battery. In January 1991, while the civil action was pending, Doris Cromwell, Linwood's wife, filed for divorce. In May 1991, "a stipulated judgment of dissolution of marriage that essentially transferred all of Linwood's real and personal property interests to Doris" was entered in the court in which the divorce action was filed. *Id.* In June 1992, the plaintiff was awarded $200,000 in damages in her civil action, after she had alleged "that the stipulated judgment was void as to her under the UFTA because Linwood acted with the intent to hinder, delay or defraud plaintiff in her efforts to collect a judgment against him." *Id.* at 243-244. The *Greeninger* court concluded that the plaintiff's claim that the divorce judgment "constitutes a fraudulent transfer under the UFTA contains allegations that, if proven, could constitute extrinsic fraud and permit a collateral attack on the . . . judgment." *Id.* at 246. The court ruled that, under the circumstances, the broad definition of "transfer" in the UFTA, and an Oregon court rule, Or R Civ P 71(C), referring to the "inherent power of a court to modify a judgment within a reasonable time," granted the trial court the authority to provide an appropriate remedy to a creditor seeking to undo a fraudulent transfer. *Greeninger, supra* at 246.

Likewise, in *Dowell v Dennis*, 998 P2d 206, 212-213 (Okla Civ App, 1999), the court concluded that a credi-

tor could collaterally attack a property division made as part of divorce decree between a debtor and his spouse on grounds that it was a fraudulent transfer under the UFTA. Plaintiff Dowell obtained a $300,000 judgment against Kenneth Ray Boyer on December 8, 1998. Two days later Tex Ann Dennis, Boyer's spouse, filed for divorce. A divorce decree that included the agreed-upon property division was entered December 30, 1998. Dowell alleged that the property was transferred under the agreed-upon property division without Boyer's receiving a reasonably equivalent value and that Boyer was either insolvent at the time of the transfers or rendered insolvent as a result. *Id.* at 207. The *Dowell* court reviewed both *Greeninger* and *Glasscock v Citizens Nat'l Bank,* 553 SW2d 411 (Tex Civ App, 1977), which supported the plaintiff's position. Further, the *Dowell* court examined whether the plaintiff's claim would violate the rule prohibiting a collateral attack on a judgment. *Dowell, supra* at 211. From the authorities the court reviewed, it concluded "that a stranger to a judgment may attack such judgment in a later proceeding on the ground of fraud where the stranger's interests, which accrued prior to the judgment under attack, have been adversely affected, regardless of whether such attack is labeled 'collateral' or 'direct.' " *Id.* at 212. The court therefore ruled that Dowell's claim came under the fraud exception to the general rule against collateral attacks. *Id.* Accordingly, the court held that Dowell's claim was not barred by the collateral-attack rule, "first, because Dowell was not a party in the divorce proceeding, and second, because he has alleged that the divorce decree effected a fraudulent transfer affecting his rights which had accrued prior to the divorce decree." *Id.* at 212-213.

We also note that California courts interpreting California's version of the UFTA, Cal Civ Code 3439 to 3439.12, which defines "transfer" the same as Michigan's UFTA,[4] have also upheld a creditor's right to claim that a transfer of a marital asset pursuant to a divorce property settlement may constitute a fraudulent transfer under the UFTA. See *Mejia v Reed*, 31 Cal 4th 657; 3 Cal Rptr 3d 390; 74 P3d 166 (2003). The *Mejia* court observed: "On its face, the UFTA applies to all transfers. . . . Consequently, most decisions of other states construing parallel provisions of the UFTA hold that it does apply to marital property transfers, including those in connection with divorce." *Mejia, supra* at 664. After analyzing the UFTA further, the *Mejia* court concluded that "the UFTA applies to property transfers under [marital-settlement agreements]." *Mejia, supra* at 669.

We recognize that the decisions of other jurisdictions regarding the UFTA are not binding on this Court, but, as noted earlier, they support our conclusion that the definition of "transfer" within the UFTA is broad enough to include various modes of disposing of assets. In particular, we conclude that a "transfer" as defined in MCL 566.31($l$) may include the division of marital assets as part of a property-settlement agreement incorporated in an uncontested divorce judgment.

Of course, the next question is whether plaintiff has alleged sufficient facts to present a justiciable claim that the martial-property settlement in this case constituted a fraudulent transfer.

---

[4] Cal Civ Code 3439.01(i) and MCL 566.31($l$) both provide: " 'Transfer' means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease, and creation of a lien or other encumbrance."

MCL 566.34(1) describes the circumstances under which a debtor's transfer of an asset is considered fraudulent with respect to a creditor:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation in either of the following:
>
> (a) With actual intent to hinder, delay, or defraud any creditor of the debtor.
>
> (b) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor did either of the following:
>
> (i) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction.
>
> (ii) Intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due.

We initially note that although plaintiff commenced her wrongful death action before Julie filed for divorce, plaintiff did not obtain her wrongful death judgment until October 2004. Yet MCL 566.34(1) provides that a transfer may be fraudulent regardless of "whether the creditor's claim arose before or after the transfer was made or the obligation was incurred . . . ." Moreover, MCL 566.31(c) defines a "claim" under the UFTA as including "a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." Accordingly, although the alleged fraudulent transfer occurred before plaintiff reduced her wrongful death claim to judgment, the UFTA does not preclude plaintiff from alleging that she is entitled to relief under the act

because the property settlement incorporated in the divorce judgment included one or more fraudulent transfers.[5]

Plaintiff contends that the divorce judgment was a fraudulent transfer under MCL 566.34(1)(a) because defendant transferred his marital assets to Julie with actual intent to hinder, delay, or defraud plaintiff from collecting her wrongful death judgment. MCL 566.34(2) lists several factors the trial court may consider in determining if a transfer of an asset was made with the actual intent to hinder, delay, or defraud a creditor. Plaintiff argues that four statutory factors apply here. In pertinent part, MCL 566.34(2) provides:

> In determining actual intent under subsection (1)(a), consideration may be given, among other factors, to whether 1 or more of the following occurred:
>
> (a) The transfer or obligation was to an insider.
>
> *   *   *
>
> (d) Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit.

---

[5] MCL 566.35 addresses circumstances in which a creditor's claim arises before the alleged fraudulent transfer. MCL 566.35 provides:

(1) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

(2) A transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent.

(e) The transfer was of substantially all of the debtor's assets.

*  *  *

(i) The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred.

Plaintiff argues that these four pertinent statutory factors demonstrate an actual intent to hinder, delay, or defraud her pursuant to MCL 566.34(1)(a). Plaintiff also argues that the trial court should have considered evidence establishing these factors and that it should have found that plaintiff had stated a claim under the UFTA that the property settlement incorporated in the divorce judgment constituted a fraudulent transfer. Consequently, plaintiff contends that she is entitled to relief under the act. MCL 556.37; MCL 556.38. We agree that plaintiff has presented evidence raising a justiciable claim for relief under the UFTA.

MCL 566.34(2)(a) permits a creditor to use evidence that a transfer or obligation was made to an insider to support a claim that the transfer was made with the actual intent to hinder, delay, or defraud the creditor. Under MCL 566.31(g)(*i*)(A) an "insider" may be a relative of the debtor. A spouse is a relative according to MCL 566.31(k). Therefore, a creditor may use evidence of a transfer from a debtor to his spouse to support a claim that the transfer was made with the intent to defraud. Although the contested transfer of assets here concerned the division of marital property pursuant to a divorce judgment, defendant and Julie were still married when they agreed to the property settlement that was incorporated into the consent divorce judgment and that transferred substantially all the marital assets to Julie. Hence, the property settlement between the divorcing spouses supports plaintiff's assertion that

defendant intended to defraud plaintiff when he agreed to transfer his interest in the marital assets to Julie.

MCL 566.34(2)(d) permits a creditor to use evidence that the debtor had been sued or was threatened with a lawsuit before the transfer was made to determine if the debtor made the transfer with the actual intent to defraud. Julie filed for divorce on November 12, 2002, less than two months after plaintiff filed her wrongful death complaint. Furthermore, defendant and Julie did not agree to the terms of the divorce judgment until after this date, and the family division of the circuit court did not enter the final divorce judgment until March 10, 2003. So the property settlement agreement included in the divorce judgment provided for the transfer of virtually all of defendant's interest in the marital assets to Julie. All of this took place after plaintiff filed the wrongful death suit and is evidence under subsection 2(d) that defendant actually intended to defraud plaintiff when he consented to the settlement and the divorce judgment.

Next, MCL 566.34(2)(e) permits a creditor to use evidence that the debtor transferred substantially all his assets to support an assertion that the transfer was made with the actual intent to defraud. Plaintiff alleged in her motion requesting that the trial court hold an evidentiary hearing regarding the extent of defendant's interest in the marital property that Julie was awarded substantially all the marital assets and that defendant was left with little property of value after the court entered the divorce judgment. The divorce judgment supports plaintiff's assertion. It reveals that Julie received substantially all the marital assets as her separate property. Under these circumstances, we conclude that plaintiff may use the transfer to Julie of substan-

tially all of defendant's interest in the marital assets to support her claim that the divorce judgment was a fraudulent transfer.

Finally, MCL 566.34(2)(i) permits a creditor to introduce evidence indicating that the debtor was insolvent or became insolvent shortly after the contested transfer to support an assertion that the debtor made the contested transfer with the actual intent to defraud. Because defendant was left with few assets after the divorce judgment was finalized yet remained responsible for several outstanding and potential debts, specifically a judgment in this case, it appears that defendant became insolvent as a result of the property transfers incorporated in the divorce judgment. Consequently, plaintiff may use defendant's insolvency to support her assertion that defendant agreed to the property settlement and the divorce judgment to defraud his creditors.

MCL 566.34(2) provides that evidence supporting at least one of the listed circumstances will support a claim that the debtor made a fraudulent transfer with the actual intent to defraud a creditor. Plaintiff alleged that four of the listed circumstances existed in the present case and that these circumstances indicated that defendant transferred substantially all his interest in the marital assets to Julie with the actual intent to prevent plaintiff from collecting her wrongful death judgment. Accordingly, we conclude that plaintiff sufficiently established a claim for relief under the UFTA.

In reaching this conclusion, we reject Julie's argument that res judicata bars plaintiff from asking the trial court to review the division of marital assets in the divorce proceedings. " 'Res judicata bars a subsequent action between the same parties when the evidence or essential facts are identical.' " *Sewell v Clean Cut Mgt,*

*Inc*, 463 Mich 569, 575; 621 NW2d 222 (2001) (citation omitted). Res judicata requires that (1) the prior action was decided on the merits, (2) the decree in the prior action was a final decision, (3) the matter contested in the second case was or could have been resolved in the first, and (4) both actions involved the same parties or their privies. *Id.*; *Peterson Novelties, Inc v City of Berkeley*, 259 Mich App 1, 10; 672 NW2d 351 (2003). Res judicata does not apply here because it is undisputed that plaintiff was not a party to the divorce proceedings and because the issue whether the division of property in the divorce judgment was a fraudulent transfer with respect to plaintiff was not litigated in the divorce proceedings.

We also reject the argument that permitting plaintiff to contest the property division in the divorce judgment violates the public-policy goal of promoting final decisions in divorce proceedings and allowing former spouses to "move on with their lives." It is the prerogative of the Legislature, and not of this Court, to establish public policy through the political process. Courts are not permitted "to substitute their judgment for that of legislative bodies on . . . questions of economic and social policy." *Muskegon Area Rental Ass'n v Muskegon*, 465 Mich 456, 467; 636 NW2d 751 (2001).

Finally, plaintiff argues that the trial court erred by failing to add Julie as a party to this case. Because plaintiff did not include this issue among the questions presented in her brief on appeal, as required by MCR 7.212(C)(5), the issue has not been properly preserved on appeal. *Grand Rapids Employees Independent Union v Grand Rapids*, 235 Mich App 398, 409-410; 597 NW2d 284 (1999). Nevertheless, this Court may consider an issue raised in a nonconforming brief when it is one of law and the record is factually sufficient, as is the case

here. *Van Buren Charter Twp v Garter Belt, Inc,* 258 Mich App 594, 632; 673 NW2d 111 (2003).

Plaintiff argues that the trial court should have added Julie as a party to the supplemental proceedings in this case, asserting that Julie was the beneficiary of fraudulent transfers from defendant. MCL 600.6128 provides in pertinent part:

> (1) Where it appears to the court that:
>
> (a) The judgment debtor may have an interest in or title to any real property, and such interest or title is disclaimed by the judgment debtor or disputed by another person;
>
> (b) The judgment debtor may own or have a right of possession to any personal property, and such ownership or right of possession is substantially disputed by another person; or
>
> (c) A third party is indebted to the judgment debtor, and the obligation of the third party to pay the judgment debtor is disputed; the court may, if the person or persons claiming adversely is a party to the proceeding, adjudicate the respective interests of the parties in such debt or real or personal property, and may determine such property to be wholly or in part the property of a judgment debtor, or that the debt is owed the judgment debtor.
>
> (2) If the person claiming adversely to the judgment debtor is not a party to the proceeding, the court shall by show cause order or otherwise cause such person to be brought in and made a party thereto, and shall set such proceeding for early hearing.

Before his divorce from Julie, defendant held an interest in or title to the real and personal property that comprised the entire marital assets. But for the fraudulent transfers, the family division of the circuit court would likely have made a fair and equitable division of the marital assets as part of the divorce, and defendant might still own or have a right to possess certain personal property that was included in the marital

estate and might well have an interest in or title to real property that had been marital property. Because the common meaning of the word "may" indicates a possibility, see *Mull v Equitable Life Assurance Society of the United States*, 444 Mich 508, 519; 510 NW2d 184 (1994), defendant, as the judgment debtor, "may" own, have an interest in, title to, or right to possession of a portion of the real and personal marital property within the meaning of MCL 600.6128(1)(a) and (b). This is because, as discussed earlier, plaintiff has stated and presented evidence of a justiciable claim under the UFTA that defendant fraudulently transferred to Julie certain personal and real property pursuant to the division of marital property in the divorce judgment. If plaintiff's claims are proved, she may be entitled to relief regarding property in Julie's possession, including an order voiding certain transfers of property from defendant to Julie under the divorce judgment. MCL 556.37; MCL 556.38. Thus, there is a possibility that defendant, the judgment debtor, may still have an interest in, hold title to, own, or have a right to possess the real or personal property that was included in the marital estate but was awarded to Julie in the divorce judgment. Moreover, defendant disclaimed any interest he had in the marital assets when he consented to the divorce judgment, and Julie disputes plaintiff's claims that defendant retained any interest in the marital assets.

Pursuant to MCL 600.6128(2), the trial court was required to make Julie a party to plaintiff's supplemental proceedings under the UFTA to determine plaintiff's and Julie's interests in the disputed property Julie received from defendant as part of the property settlement incorporated in the divorce judgment. While Julie is not a party to the wrongful death lawsuit, she claims that she has the exclusive ownership interest in sub-

stantially all the marital assets that defendant disclaimed pursuant to the consent divorce judgment. Therefore, Julie is a "person claiming adversely to the judgment debtor" pursuant to MCL 600.6128(2).

We reject Julie's strained construction that the phrase "person claiming adversely to the judgment debtor" refers to plaintiff, not herself. When interpreting a statute, "we consider both the plain meaning of the critical word or phrase as well as 'its placement and purpose in the statutory scheme.' " *Sun Valley Foods Co v Ward*, 460 Mich 230, 237; 596 NW2d 119 (1999) (citation omitted). Furthermore, "[a]s far as possible, effect should be given to every phrase, clause, and word in the statute." *Id*. Here, plaintiff is plainly a "judgment creditor," while defendant is clearly a "judgment debtor." But both are already parties to these proceedings. Accordingly, when read in the context of MCL 600.6128(2) and the purpose of MCL 600.6128 and the rest of chapter 61 of the Revised Judicature Act (proceedings supplementary to judgment) as a whole, the phrase "person claiming adversely to the judgment debtor" can only refer to a nonparty claiming an interest in property superior to that of the judgment debtor and judgment creditor.

Moreover, to the extent that the phrase "person claiming adversely to the judgment debtor" may be considered ambiguous, it should be interpreted in a manner consistent with the common law. "The language of a statute should be read in light of previously established rules of the common law, including common-law adjudicatory principles." *B & B Investment Group v Gitler*, 229 Mich App 1, 7; 581 NW2d 17 (1998). "Well-settled common-law principles are not to be abolished by implication, and when an ambiguous statute contravenes common law, it must be interpreted

so that it makes the least change in the common law."
*Id.* Our Supreme Court has long held that when a
creditor attempts to collect a judgment by setting aside
a judgment debtor's fraudulent conveyances of his
property to others, "the creditor may make all such
parties defendants . . . ." *Hulbert v Detroit Cycle Co,* 107
Mich 81, 84; 64 NW 950 (1895). The *Hulbert* Court
explained, "It would certainly be a reproach upon
equity jurisprudence if a creditor were compelled to
institute a separate suit against each person to whom a
debtor has fraudulently conveyed his property." *Id.*
Accordingly, the common law supports our interpreta-
tion of the statute and also supports our conclusion that
the trial court erred by declining to make Julie a party
to plaintiff's supplemental proceedings under the
UFTA.

Finally, we note that the principles concerning join-
der of parties set forth in the court rules instruct that
Julie was required to be added as a party defendant to
plaintiff's supplemental proceedings. MCR 2.205(A),
regarding necessary joinder of parties, reads:

> Subject to the provisions of [other rules not applicable
> here], persons having such interests in the subject matter
> of an action that their presence in the action is essential to
> permit the court to render complete relief must be made
> parties and aligned as plaintiffs or defendants in accor-
> dance with their respective interests.

Not only is Julie's joinder necessary to accord her due
process while litigating her and plaintiff's claims to the
disputed property, her presence is also essential to
permit the trial court to render complete relief if
plaintiff's UFTA claim is successful.

We reverse the trial court's February 16, 2005, order
that dissolved the January 21, 2005, restraining order,
denied plaintiff's request for an evidentiary hearing,

and denied plaintiff's motion to add Julie as a party to plaintiff's supplemental collection proceedings. We remand for Julie Swabash to be added to the supplemental proceedings as a party defendant and for the trial court to conduct further proceedings consistent with this opinion. We do not retain jurisdiction.

WHITE, J., concurred.

O'CONNELL, P.J. *(concurring in part and dissenting in part)*. I concur with the majority opinion that the trial court lacked authority to set aside or modify a divorce judgment entered by a different circuit judge. However, I respectfully disagree with the majority opinion that Julie Titus can be made a party to this lawsuit or that plaintiff can recover any "marital assets"[1] by way of a collateral attack on a valid divorce judgment. I would affirm the trial court for the following reasons.

First, plaintiff filed a motion under MCR 2.209(A)(3) to intervene in the divorce proceedings for the purpose of arguing that the property-settlement provisions dividing the marital assets constituted a fraud upon defendant's creditors, such as herself, and were inequitable. Judge Patricia N. Conlon, the judge in defendant's divorce, denied the motion to intervene. Plaintiff did not appeal this ruling, but instead attempted to add Julie Titus as a party to the present wrongful death lawsuit. In my opinion, plaintiff's remedy was to appeal the decision of Judge Conlon, not to attempt to add Julie Titus as a party to another lawsuit. I note that Julie Titus did not do any act that would subject her to being a party in a wrongful death lawsuit.

---

[1] The majority opinion's reasoning raises, but does not answer, the issue whether a judgment debtor can attach marital property for the debt of one of the spouses.

In essence, adding Julie Titus as a party to this lawsuit is an attempt to institute a collateral attack on the valid divorce judgment. I am not aware of any Michigan cases that allow a collateral attack on a valid divorce judgment. In fact, my research indicates that divorce judgments are not typically subject to third-party attacks. *White v Michigan Life Ins Co*, 43 Mich App 653, 657; 204 NW2d 772 (1972).

Second, on appeal, plaintiff asks this Court to make Julie Titus a party to this lawsuit. However, plaintiff did not include this issue among the questions presented in her brief on appeal, as required by MCR 7.212(C)(5). Therefore, in my opinion, this issue is not properly before this Court, and review of the issue is inappropriate. *Weiss v Hodge (After Remand)*, 223 Mich App 620, 634; 567 NW2d 468 (1997).

I would affirm the decision of the trial court.