2000 OK CIV APP 29

**Jerry DOWELL, Plaintiff/Appellant,**

v.

**Tex Ann DENNIS and Kenneth Ray Boyer, Defendants/Appellees.**

No. 93,274.

Court of Civil Appeals of Oklahoma, Division No. 3.

Dec. 3, 1999.

Order Denying Rehearing and Motion to Dismiss Jan. 13, 2000.

Publication of Rehearing Order Directed April 28, 2000.

Scott G. Robelen, Fulkerson & Fulkerson, Oklahoma City, Oklahoma, For Plaintiff/Appellant.

Brent W. Pitt, Oklahoma City, Oklahoma, For Defendant/Appellee Tex Ann Dennis.

Gary L. Levine, Derryberry, Quigley, Solomon & Naifeh, Oklahoma City, Oklahoma, For Defendant/Appellee Kenneth Ray Boyer.

BUETTNER, Presiding Judge:

¶1 Plaintiff/Appellant Jerry Dowell appeals from summary judgment entered in favor of Defendants/Appellees Tex Ann Dennis and Kenneth Ray Boyer. The trial court granted Dennis' and Boyer's motion for summary judgment based on the determination that Dowell's action, to avoid as a fraudulent transfer the property division made pursuant to Boyer's and Dennis' divorce decree, constituted an impermissible collateral attack on a divorce decree. Because we find the trial court erred as matter of law, we reverse and remand.

¶2 Dowell's attack on the divorce decree was generated by a $300,000.00 verdict Dowell obtained against Boyer December 8, 1998.[1] For facts supporting alleged fraudulent transfer, Dowell points to a petition for divorce which Dennis filed against Boyer December 10, 1998,[2] and a decree of divorce, including an agreed property division, entered December 30, 1998. Dowell alleged that the property transfer reflected in the agreed property division was made without receiving a reasonably equivalent value and that Boyer was insolvent at the time of the transfer, or became insolvent as a result of the transfer. Dowell also alleged that the transfer was made to an insider[3] for an antecedent debt.[4]

1. According to documents submitted by Dennis, the verdict was reduced to approximately $104,000 by way of remittitur by the trial court filed May 11, 1999.

2. Boyer and Dennis were married in December 1995.

3. A former spouse has been held to be an "insider" for purposes of the UFTA. *Morris v. Nance,* 132 Or.App. 216, 888 P.2d 571 (1994).

4. These are factors to be considered in determining if a transfer is fraudulent under the UFTA. See 24 O.S.1991 § 116, which provides:

A. A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

1. with actual intent to hinder, delay, or defraud any creditor of the debtor; or

2. without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

a. was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreason-

¶ 3 On January 29, 1999, Dowell filed his petition, application for injunction, application for attachment and application for writ of execution in which he alleged that the property division agreement between Boyer and Dennis amounted to a fraudulent transfer, pursuant to the Uniform Fraudulent Transfer Act,[5] which must be avoided to the extent necessary to satisfy his judgment.[6] Dennis and Boyer each raised affirmative defenses including a lack of standing to challenge the divorce decree, and res judicata/collateral estoppel.

¶ 4 Dennis filed a motion to dismiss April 22, 1999,[7] arguing that Dowell's petition amounted to an impermissible collateral attack on the divorce judgment. Dennis cited the general rule in Oklahoma that a collateral attack may only be made where a judgment is void on the face of the judgment roll, citing *Nilsen v. Ports of Call Oil Co.,* 1985 OK 104, 711 P.2d 98.

¶ 5 Dowell filed his response to the motion to dismiss along with a motion for summary judgment May 11, 1999.[8] Dowell argued that Dennis and Boyer had entered a waiver divorce in which the court does not consider the equity of the agreed property division. Dowell further urged that the settlement agreement transferred "substantially all" of Boyer's property to Dennis. Dowell argued further that the transfer was fraudulent under 24 O.S.1991 § 117,[9] and that accordingly, the divorce decree was void on its face. Dowell concluded that a divorce decree cannot validate an otherwise fraudulent transfer.

¶ 6 Dennis and Boyer responded to Dowell's motion for summary judgment May 24, 1999 and May 26, 1999, respectively. Dennis

ably small in relation to the business or transaction, or
b. intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.
B. In determining actual intent pursuant to the provisions of paragraph 1 of subsection A of this section, consideration may be given, among other factors, to whether:
1. the transfer or obligation was to an insider;
2. the debtor retained possession or control of the property transferred after the transfer;
3. the transfer or obligation was disclosed or concealed;
4. before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;
5. the transfer was of substantially all the debtor's assets;
6. the debtor absconded;
7. the debtor removed or concealed assets;
8. the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;
9. the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;
10. the transfer occurred shortly before or shortly after a substantial debt was incurred; and
11. the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

5. 24 O.S.1991 §§ 112 *et seq.*

6. 24 O.S.1991 § 119(A)(1) provides that in an action for relief against a fraudulent transfer or obligation, a creditor may obtain avoidance of the transfer to the extent necessary to satisfy the creditor's claim.

7. In her motion to dismiss, Dennis asserted that a hearing on Dowell's application for an injunction had been held February 11, 1999, after which the trial court denied the application for an injunction because the divorce decree appeared equitable on its face. The record on appeal does not include such an order.

8. Also on May 11, 1999, the trial court in the original action between Dowell and Boyer granted Boyer a remittitur of part of the $300,000.00 judgment which reduced the judgment to approximately $104,000.00.

9. Section 117 provides: Transfer fraudulent to creditor whose claim arose before transfer made or obligation incurred

A. A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.
B. A transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent.

and Boyer each proposed disputed issues of fact. They argued that the trial court in the divorce proceeding ruled that the property settlement was equitable and that there was no evidence that the decree transferred substantially all of Boyer's assets to Dennis. Dennis attached the divorce decree to her response. Boyer also argued that a property settlement agreement that has become part of the divorce decree is no longer contractual, but is part of the court's judgment, citing *Acker v. Acker*, 1979 OK 67, 594 P.2d 1216, 1219. Boyer also argued that Dowell failed to submit sufficient evidence to support his bid for summary judgment.

¶ 7 The trial court order of May 28, 1999 denied Dennis' motion to dismiss and granted Dennis' and Boyer's motions for summary judgment. In the order, the trial court gave the following reason for its decision: "Plaintiff's claim is an impermissible collateral attack on a Divorce Decree."[10] The trial court did not address whether there were disputed issues of material fact. Accordingly, although cast as a grant of summary judgment, the trial court in essence dismissed Dowell's claim on a question of law.

¶ 8 On appeal, Dowell argues that the trial court erred (1) in determining that the transfer of property from Boyer to Dennis as part of the divorce decree was exempt from the provisions of the UFTA, (2) in finding that the transfers did not violate the provisions of the UFTA, and (3) in determining that the UFTA does not apply to a transfer of property made under a divorce decree. We address only the issue of whether a plaintiff creditor may attack a final divorce decree as a fraudulent transfer under the UFTA.

¶ 9 We note two cases from other jurisdictions with facts similar to those in the instant case. *Greeninger v. Cromwell*, 140 Or.App. 241, 915 P.2d 479 (1996) involved summary judgment granted to the divorced defendants in the plaintiff's claim seeking to set aside alleged fraudulent transfers made as part of an agreed property settlement in the defendants' divorce proceeding. In *Greeninger*, the defendant husband was convicted of raping the plaintiff. The plaintiff then filed a civil action for sexual battery against the defendant husband. After the plaintiff filed her claim, the defendant wife filed her petition for divorce against the defendant husband in another county. A jury returned a verdict in favor of the plaintiff in her sexual battery case, but a new trial was ordered because of a procedural error. In the agreed divorce decree, "essentially all" of the husband defendant's real and personal property was transferred to the defendant wife.

¶ 10 The plaintiff then filed her claim that the agreed property division was void as to her because it was made with the intent to hinder, delay or defraud the plaintiff in her efforts to collect a judgment. Another jury later awarded the plaintiff a $200,000.00 judgment against the defendant husband in the plaintiff's sexual battery case. The trial court granted summary judgment to the defendants based on the fact that the plaintiff's fraudulent transfer case constituted a collateral attack on another county's divorce decree. The Oregon Court of Appeals reversed, recognizing that the plaintiff's claim was a collateral attack because it was intended to impeach the effect of the decree as to her, rather than a proceeding initiated "for the express purpose of annulling, correcting, or modifying" the divorce decree. The appellate court concluded that jurisdiction over a fraudulent conveyance action is not limited to the same court which entered the challenged judgment. The court remanded the case to the trial court which again granted summary judgment to the defendants, holding that the plaintiff's fraudulent conveyance action, filed in a county other than that which entered the divorce decree is a collateral attack. The opinion in *Greeninger* follows the appeal of the second entry of summary judgment in favor of the defendants.

¶ 11 The court determined that collateral attacks on a divorce decree are permissible for extrinsic fraud, which it noted had been defined as "collateral acts not involved in the

---

10. 49 C.J.S. § 401 states the general rule that, unless a judgment is void, it is not subject to collateral attack by the parties or their privies.

fact finder's consideration of the merits of the case." *Id.* at 481. The court noted that the plaintiff had alleged that the defendant husband transferred all of his interest in the defendants' assets to the defendant wife to avoid paying the judgment entered in favor of the plaintiff. The court concluded that the plaintiff's allegations would not necessarily be involved in the determination of a just and proper property settlement, so that the allegations, if proved, could constitute extrinsic fraud, making a collateral attack permissible. The court footnoted the following passage from *Kardynalski v. Fisher*, 135 Ill.App.3d 643, 482 N.E.2d 117, 90 Ill.Dec. 410, (1985).

> Special scrutiny is applied to transfers between spouses where the debtor spouse is thereby rendered insolvent and unable to satisfy the claims of his creditors. * * * The incorporation of the parties' agreement into a judicial decree does not alter this result. While judicial approval in such circumstances may represent a determination that the agreement is fair and equitable as between the parties to the divorce, it does not represent a determination that the agreement perpetrates no fraud upon the creditors of one spouse, particularly where the claims of the creditors are not made known to the court or provided for in the decree.

The Oregon Court of Appeals reversed and remanded the second grant of summary judgment based on its holding that the plaintiff's allegations may constitute extrinsic fraud, so that a collateral attack on the divorce decree may be permissible.

¶ 12 The case of *Glasscock v. Citizens National Bank*, 553 S.W.2d 411 (Tex.Civ. App.1977) also involved facts similar to the instant case. In 1973, Mr. Glasscock deeded

3,270 acres of community property to his wife to reimburse her for advances made to Mr. Glasscock out of the wife's separate property. Mrs. Glasscock filed for divorce in May 1974 and the divorce decree was filed in October 1974. The Glasscocks testified that, other than the deeded real property mentioned above, there was no property settlement reached. Meanwhile, in August 1974, the creditors of Mr. Glasscock obtained a judgment for $32,951.12. The creditors sued to have the conveyance of the real property set aside, alleging the conveyance was for the purpose of hindering, delaying or defrauding the creditors. Following a jury trial, the court declared the conveyance void.

¶ 13 Mrs. Glasscock appealed, alleging that the creditors' claim constituted a collateral attack on the divorce decree. The Texas Court of Civil Appeals held that res judicata and collateral estoppel apply only to parties to the prior suit and their privies. The court noted that privies are those "who are in law so connected with a party to the judgment as to have such an identity of interest that the party to the judgment represented the same legal right." The court further noted that creditors could not be bound by a divorce decree because the court in a divorce action has no authority to disturb a creditor's lawful rights against a party to the divorce or to award property to the creditor's prejudice. The court concluded that the creditors' claim was not a collateral attack on the prior divorce decree.

¶ 14 In *Estate of Akers*, 1975 OK CIV APP 29, 541 P.2d 284, this court had occasion to address the issue of collateral attacks in domestic cases. *Akers* involved probate proceedings in which three women claimed to be the surviving widow of the decedent.[11] Ver-

---

11. The facts in *Akers* are complicated. Akers was divorced from his first wife, Alma, in 1971 after 35 years of marriage. Barbara testified she began living with Akers as his common law wife in 1947 until Akers' death. Patty testified that she began living with Akers as his common law wife in 1965 until his death. Patty and Barbara claimed that their relationships with Akers ripened into common law marriages in January 1972, six months after Akers' divorce from Alma was filed. Akers formally married Verna in February 1973 and they were granted a divorce in August 1973. *The divorce decree found that Verna and Akers had been married.* Akers died intes-

tate in October 1973. The three "wives," Barbara, Patty and Verna, as well as Akers' siblings as a group, each filed petitions for letters of administration. The siblings and Verna sought the dismissal of the other two wives, Barbara and Patty, which the trial court granted. The trial court based the dismissal on its finding that the petitions of Barbara and Patty, alleging they were married to Akers at the time of his death, constituted collateral attacks on the divorce decree obtained by Verna, because it held Akers and Verna were married. The opinion follows Barbara's and Patty's appeal of their dismissal.

na and the siblings contended that Barbara's and Patty's petitions for letters of administration collaterally attacked the finding in Verna's divorce decree that Verna and Akers were married, because Barbara and Patty each sought to establish that they were married to Akers until his death. Verna also alleged that, following her divorce from Akers, she and Akers entered into a common law marriage for the two months between the divorce and Akers' death.

¶ 15 In rendering its decision, this court first looked to the definition, scope and nature of the collateral attack doctrine. This court recognized the general rule that a collateral attack on a judgment is " 'an attempt to avoid, defeat, or evade it, or deny its force and effect, in some incidental proceeding not provided by law for the express purpose of attacking it.' " [12] This court noted that when a judgment is collaterally attacked there is a presumption that the judgment is valid in all respects.[13] This court also noted that the collateral attack doctrine is related to *res judicata* [14] and collateral estoppel.[15] In *Akers,* this court found the following exceptions to the rule that collateral attacks are impermissible: judgments which are void and judgments in which extrinsic fraud has been shown may be attacked collaterally. Further, "the conclusiveness of a judgment extends only to the question directly in issue, and not to any incidental or collateral matter, though it may have arisen and been passed on." *Akers,* 541 P.2d at 286. This court also found it significant that in most cases in which an impermissible collateral attack was attempted, the parties attempting the collateral attack are the same parties, or their privies, from the original judgment under

attack, indicating that strangers may make permissible collateral attacks.

¶ 16 In *Akers,* this court adopted the " 'general and established rule of law' "

> that a stranger (one not a party to the assailed proceeding) whose rights and interests have been adversely affected collaterally by a judgment which for any reason is void shall not be estopped from asserting such affected rights and protecting such interests in some other proceeding even though the validity of the earlier judgment is incidentally drawn in question. *Id.* at 287, citing *Old Colony Trust Co. v. Porter,* 324 Mass. 581, 88 N.E.2d 135, 12 A.L.R.2d 706 (1949).

This court also relied on a Utah case which held that "a suit in equity to set aside a decree on the ground of want of jurisdiction ... or on the ground of fraud" is a direct attack, rather than a collateral attack. *In Re Waters' Estate,* 100 Utah 246, 113 P.2d 1038 (1941). In *Akers,* this court indicated the evidence showed fraud on the part of Akers and concluded that, to allow the collateral attack doctrine to bar Patty and Barbara from asserting their claims to being the widow of Akers, would be "an affront to equity and a defeat for justice by binding" them to a decree of which they had no notice and in which they took no part. This court relied on the United States Supreme Court's holding that "one not a party to an action nor notified of its pendency is not bound by such judgment." [16]

¶ 17 The Oklahoma Supreme Court has also allowed a divorce decree's finding that a child was born of the marriage to be attacked in a subsequent paternity proceeding

**12.** Citing *May v. Casker,* 188 Okla. 448, 110 P.2d 287 (1940) and *Hixson v. Cook,* 1962 OK 273, 379 P.2d 677.

**13.** Citing *Warren v. Stansbury,* 190 Okla. 554, 126 P.2d 251 (1942).

**14.** *Res Judicata* has been explained such that a judgment in an action bars the parties or their privies from relitigating not only the adjudicated claim, but also any theories or issues that were actually decided together with those which could have been decided. *McDaneld v. Lynn Hickey Dodge, Inc.,* 1999 OK 30, 979 P.2d 252. This court has held that res judicata requires identity

of parties and subject matter. *McIntosh v. Limestone Natl. Bank,* 1995 OK CIV APP. 24, 894 P.2d 1145.

**15.** Under the doctrine of collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that issue may not be relitigated between the same parties or their privies in a future suit on a different cause of action. *Fent v. Oklahoma Natural Gas Co.,* 1994 OK 108, 898 P.2d 126.

**16.** Citing *Hale v. Finch,* 104 U.S. 261, 26 L.Ed. 732 (1881).

brought by the child (through his guardian ad litem) against the putative father. *Deloney v. Downey,* 1997 OK 102, 944 P.2d 312. The putative father argued that the paternity action was an impermissible collateral attack on the divorce decree. However, the Supreme Court held that the child was not a party, or in privy with a party, to the divorce action, she could not be bound by the divorce decree.

¶ 18 49 C.J.S. § 408 distinguishes between direct and collateral attacks on judgments. A direct attack on a judgment is there defined as "an attempt to avoid or correct it in some manner provided by law, in a proceeding instituted for that purpose, in the same action and in the same court." That section further explains that where fraud or mistake is involved, an attack on a judgment is generally direct. A collateral attack, on the other hand, is defined as "an attempt to impeach the judgment by matters dehors the record, before a court other than the one in which it was rendered, in an action other than that in which it was rendered; an attempt to avoid, defeat, or evade it, or deny its force and effect, in some incidental proceeding not provided by law for the express purpose of attacking it ..." Section 410 notes that a suit for equitable relief from the effect of a judgment, as is Dowell's claim in the instant case, is not a collateral attack.[17] Even in states in which such an action is held to be a collateral attack, an exception is when fraud is alleged. 49 C.J.S. § 414 explains that a stranger to the original proceeding may attack the judgment in a collateral proceeding if the stranger's rights, accruing before the judgment, have been adversely affected.

¶ 19 Most important to the instant case, however, is 49 C.J.S. § 415 which explains that a creditor whose rights will be affected by the enforcement of a judgment may collaterally attack the judgment on the ground that it is fraudulent as to the creditor. That section further provides that the creditor must prove that there was fraud designed to

injure the creditor and the creditor's rights must have accrued before the judgment was entered. This section supports our view that if Dowell's attack on the divorce decree is a collateral attack, it is a permissible collateral attack.

■ ¶ 20 The common thread which emerges from these cases and treatises is that a stranger to a judgment may attack such judgment in a later proceeding on the ground of fraud where the stranger's interests, which accrued prior to the judgment under attack, have been adversely affected, regardless of whether such attack is labeled "collateral" or "direct." See also *Johnson v. Hartford Ins. Group,* 99 Idaho 134, 578 P.2d 676 (1978) (a void judgment may be attacked by strangers, while a merely voidable judgment may not be unless the decree prejudices rights which accrued prior to its rendition); *Schmidt v. Retirement Board of San Francisco City and County Employees,* 37 Cal.App.4th 1204, 44 Cal.Rptr.2d 297 (1995) (a decision purporting to bind, to the findings of an earlier action, third parties who had no notice or right to be heard deprives those third parties of property without due process); *Terra–Nova Investments v. Rosewell,* 235 Ill.App.3d 330, 601 N.E.2d 1109, 176 Ill.Dec. 411 (1992) (only the parties, and their privies, to a prior judgment can be barred from challenging the judgment in a collateral attack); *Fremont Indemnity Co. v. Industrial Commission of Arizona,* 144 Ariz. 339, 697 P.2d 1089 (1985) (stranger to litigation may not be bound by the judgment in a later proceeding).

¶ 21 Dowell alleged that the divorce decree must be avoided to the extent of his judgment as a fraudulent transfer. Dowell has therefore made his claim under the fraud exception to the general rule against collateral attacks. We find that Dowell is not bound by and may attack the divorce decree, first, because Dowell was not a party in the divorce proceeding, and second, because he has

---

**17.** Citing *Seay v. Hawkins,* 17 F.2d 710 (C.C.A.8 Okla.1927) and *Seekatz v. Brandenburg,* 150 Okla. 53, 300 P. 678 (1931) for the holding that a suit to enjoin or set aside a judgment is a direct attack.

alleged that the divorce decree effected a fraudulent transfer affecting his rights which had accrued prior to the divorce decree. Whether Dowell can actually prove a fraudulent transfer under the UFTA is not before us. Accordingly, the trial court's decision granting summary judgment to Dennis and Boyer is REVERSED and REMANDED for proceedings consistent with this opinion.

GARRETT, J., and ADAMS, J., concur.

## ORDER

Appellant Jerry Dowell and Appellees Tex Ann Dennis and Kenneth Ray Boyer have jointly petitioned the court to grant rehearing, withdraw the court's opinion filed December 3, 1999, and dismiss the appeal, on the ground that the parties have settled their dispute.

We note that both the Oklahoma Supreme Court and the United States Supreme Court have taken the position that more than mere settlement of a case is necessary to justify withdrawal or vacation of an appellate decision. In *Goldman v. Goldman,* 1994 OK 111, 883 P.2d 164, 166, the Oklahoma Supreme Court stated:

Our next concern is with the parties' joint request for (a) a post-decisional dismissal of the appeal and for (b) withdrawal of the *published* Court of Appeals' opinion. The request is advanced *sans* explanation or grounds. We must decline to set aside the decisional product of an appellate court when no compelling reason is apparent and no legally tenable ground has been urged.

The United States Supreme Court considered the issue of vacating an appellate decision, after settlement, in *U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership,* 513 U.S. 18, 115 S.Ct. 386, 130 L.Ed.2d 233 (1994). The court held:

We hold that mootness by reason of settlement does not justify vacatur of a judgment under review. This is not to say that vacatur can never be granted when mootness is produced in that fashion. As we have described, the determination is an equitable one, and exceptional circumstances may conceivably counsel in favor of such a course. It should be clear from our discussion, however, that those exceptional circumstances do not include the mere fact that the settlement agreement provides for vacatur—which neither diminishes the voluntariness of the abandonment of review nor alters any of the policy considerations we have discussed.

Absent exceptional circumstances, which are not alleged in the Joint Petition For Rehearing and Motion to Dismiss Appeal, we are constrained to deny the motion.

DONE BY ORDER OF THE COURT OF CIVIL APPEALS this 13th day of January, 2000.