**Michigan Supreme Court**
**Lansing, Michigan**

# Opinion

Chief Justice:
Clifford W. Taylor

Justices:
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman

FILED JULY 2, 2008

JAN KAY ESTES, personal representative
of the estate of Douglas Duane Estes,

      Plaintiff-Appellee,

v

      No. 133098

JEFF EDWARD TITUS,

      Defendant-Appellee,

and

JULIE L. SWABASH, formerly known as
JULIE L. TITUS,

      Appellant.

BEFORE THE ENTIRE BENCH

KELLY, J.

    In this case of first impression, we are asked whether the Uniform

Fraudulent Transfer Act (UFTA)[1] applies to a transfer of property made pursuant

to a property settlement agreement incorporated in a divorce judgment. We hold

---

[1] MCL 566.31 *et seq*.

that it does apply and that a UFTA claim is not an impermissible collateral attack on a divorce judgment. However, property owned as tenants by the entirety is not subject to process by a creditor holding a claim against only one spouse. Such property is not an "asset" under the UFTA. Therefore, its distribution in a divorce judgment does not constitute a "transfer" for purposes of that act.

Because the trial court refused to apply the UFTA in this case, it never addressed whether plaintiff stated a valid cause of action against Julie Swabash under the act. Thus, the question whether plaintiff raised issues of fact concerning Jeff Titus's actual intent to defraud her was not properly before the Court of Appeals. Hence, we vacate the portion of the Court of Appeals judgment that discusses the factual sufficiency of plaintiff's claim of a transfer made with an actual intent to defraud. We affirm in part and vacate in part the judgment of the Court of Appeals.

## I. FACTS AND PROCEDURAL HISTORY

The relevant facts of this case are as follows. On September 23, 2002, plaintiff Jan Estes filed a wrongful death action against defendant Jeff Titus, the incarcerated murderer of plaintiff's husband.[2] Not long after, Titus's wife, now known as Julie Swabash, filed for divorce. A divorce judgment entered on March

---

[2] Titus shot plaintiff's husband and another hunter during deer hunting season in 1990. The case was not solved until a decade later, and Titus was convicted of premeditated murder and sentenced to a nonparolable term of life in prison in 2002.

23, 2003, providing Swabash with nearly all the marital assets pursuant to the parties' property settlement agreement.[3] The judgment explained that the property distribution was unequal because Titus was serving a life sentence in prison and was relieved of any child support obligation for the couple's 17-year-old daughter.

On March 24, 2003, plaintiff sought to intervene in the divorce action. She challenged the distribution of assets to which Titus was entitled in anticipation of obtaining a recovery from him in her wrongful death action. The divorce court denied the motion, and plaintiff did not appeal the denial. Instead, on January 20, 2005, after obtaining a wrongful death award, she moved under MCL 600.6128 to join Swabash in the wrongful death action in an effort to collect the judgment.

Plaintiff contended that the Tituses' property settlement had been a fraudulent transfer within the meaning of the UFTA. The trial court held that it lacked the authority to amend the judgment entered by the divorce court. It declined to add Swabash as a party, dissolved the restraining order, and quashed the discovery subpoena it had issued earlier. Plaintiff appealed.

Judge Markey, writing for the majority in the Court of Appeals, joined by Judge White, held that the UFTA applied to property transfers in divorce cases. The Court of Appeals majority went further, holding that plaintiff had sufficiently

---

[3] The terms of the parties' property settlement agreement were included in the divorce judgment, but the agreement explicitly was not merged in the judgment.

established a claim under the UFTA by demonstrating an actual intent to defraud.[4]

The Court remanded the matter to the trial court so that Swabash could be added

as a party defendant to the supplemental proceedings in the wrongful death case.[5]

Judge O'Connell dissented in part in the belief that the Court of Appeals majority

was allowing a collateral attack on the divorce judgment. We granted leave to

appeal.[6]

## II. STANDARD OF REVIEW

This appeal presents jurisdictional issues, which we review de novo.[7] The

interpretation of statutes and court rules is also a question of law subject to de

novo review,[8] as is the application of legal doctrines, such as res judicata and

collateral estoppel.[9]

## III. THE UFTA'S APPLICATION TO PROPERTY SETTLEMENTS IN DIVORCE CASES

In her appeal, Swabash argues that the Legislature did not intend to include

property distributions in divorce cases within the purview of the UFTA. We note

initially that the language of the act does not exempt from its reach property

---

[4] See MCL 566.34(2).

[5] *Estes v Titus*, 273 Mich App 356; 731 NW2d 119 (2006).

[6] *Estes v Titus*, 478 Mich 864 (2007).

[7] *Lapeer Co Clerk v Lapeer Circuit Judges*, 465 Mich 559, 566; 640 NW2d 567 (2002).

[8] *Cardinal Mooney High School v Michigan High School Athletic Ass'n*, 437 Mich 75, 80; 467 NW2d 21 (1991).

[9] *Ghaffari v Turner Constr Co*, 473 Mich 16, 19; 699 NW2d 687 (2005).

4

transferred pursuant to divorce judgments.  However, the definition of "asset" in the UFTA does exempt some property held as tenants by the entirety.[10]  Hence, in a UFTA action, marital property held by the entirety is exempt from the creditor of only one spouse when the property is transferred pursuant to a divorce judgment. But property transferred pursuant to a property settlement agreement incorporated in a divorce judgment is subject to a UFTA action if it meets the definition of an asset.

## A. TRANSFER

We reject Swabash's claim that the UFTA can never reach the transfer of property in divorce actions.  The UFTA defines "transfer" at MCL 556.31(*l*) as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, and creation of a lien or other encumbrance."

A court may provide for the distribution of property in a divorce judgment, and, when it enters, the judgment has the same effect as a deed or a bill of sale.[11]

---

[10] MCL 566.31(b)(*iii*).

[11] MCL 552.401 provides:

> The circuit court of this state may include in any decree of divorce or of separate maintenance entered in the circuit court appropriate provisions awarding to a party all or a portion of the property, either real or personal, owned by his or her spouse, as appears to the court to be equitable under all the circumstances of the case, if it appears from the evidence in the case that the party contributed to the acquisition, improvement, or accumulation of the

(continued…)

A property settlement agreement incorporated in a divorce judgment disposes of the parties' interests in the marital property. As part of the judgment, it effectuates a transfer for purposes of the UFTA when the divorce judgment enters.

We conclude that plaintiff may challenge the Tituses' property settlement agreement incorporated in the divorce judgment as a transfer within the purview of the UFTA.

## B. PROPERTY HELD AS TENANTS BY THE ENTIRETY

Swabash's argument that the Legislature did not intend that the UFTA reach property transferred in a divorce action pursuant to a property settlement agreement is correct only with respect to some property held as tenants by the entirety. Only spouses can hold property in that fashion.[12]

A UFTA action will not reach such property unless both spouses are debtors on the claim that is the subject of the action. This is because a "transfer" under the UFTA includes "disposing of or parting with an asset or an interest in an asset."[13] "Asset" is defined in the act as including the "property of the debtor."[14]

---

(…continued)

> property. The decree, upon becoming final, shall have the same force and effect as a quitclaim deed of the real estate, if any, or a bill of sale of the personal property, if any, given by the party's spouse to the party.

[12] "Husband and wife are the only persons who can be tenants by the entireties." *Field v Steiner*, 250 Mich 469, 477; 231 NW 109 (1930).

[13] MCL 566.31(*l*).

[14] MCL 566.31(b).

One important exception is "[a]n interest in property held in tenancy by the entireties to the extent it is not subject to process by a creditor holding a claim against only 1 tenant."[15] Property held as tenants by the entirety is exempt from the claims of the creditors of only one spouse and is not an asset. Hence, a distribution of such property in a divorce judgment is not a transfer for purposes of the UFTA.

"A judgment lien does not attach to an interest in real property owned as tenants by the entirety unless the underlying judgment is entered against both the husband and wife."[16] The Legislature extended that same protection to "[a]ll bonds, certificates of stock, mortgages, promissory notes, debentures, or other evidences of indebtedness" held by a husband and wife.[17] Thus, "[p]roperty described in section 1 of 1927 PA 212, MCL 557.151, or real property, held jointly by a husband and wife as a tenancy by the entirety is exempt from execution under a judgment entered against only 1 spouse."[18]

Therefore, real estate and the financial instruments described in MCL 557.151 held as tenants by the entirety cannot be the subject matter of a UFTA claim if only one spouse is the debtor. This conclusion fits into the larger statutory purpose of avoiding fraudulent transfers because it is difficult to

---

[15] MCL 566.31(b)(*iii*).

[16] MCL 600.2807(1).

[17] MCL 557.151.

[18] MCL 600.6023a.

comprehend how disposing of property that a creditor cannot reach could "defraud" that creditor.

This rule applies when property held as tenants by the entirety is disposed of in a divorce judgment, despite the fact that the divorce ends the tenancy by the entirety.[19] This is because the spouses hold the property as tenants by the entirety until the marriage is dissolved. Under the UFTA, such property is not an asset, and its distribution pursuant to the divorce judgment is not a transfer.

## IV. UFTA RELIEF AND COLLATERAL ATTACKS ON DIVORCE JUDGMENTS

The dissenting judge in the Court of Appeals opined that plaintiff was precluded from using this case to collaterally attack the Tituses' divorce judgment. According to the dissent, plaintiff's proper remedy was to appeal the divorce court's denial of her motion to intervene in the divorce proceedings.[20] The dissent's position is faulty because it presumes that the divorce court had the authority to determine a creditor's property rights within a divorce proceeding. If that had been the case, plaintiff would have been required to appeal the divorce court's denial of her motion to intervene.

---

[19] MCL 552.102 provides: "Every husband and wife owning real estate as joint tenants or as tenants by entireties shall, upon being divorced, become tenants in common of such real estate, unless the ownership thereof is otherwise determined by the decree of divorce."

[20] *Estes,* 273 Mich App at 386-387 (O'Connell, P.J., dissenting).

8

## A. THE EFFECT OF PLAINTIFF'S FAILURE TO APPEAL THE ORDER DENYING HER MOTION TO INTERVENE

This Court has long recognized that the jurisdiction of a divorce court is strictly statutory and limited to determining "the rights and obligations between the husband and wife, to the exclusion of third parties . . . ."[21] When fraud is alleged, third parties can be joined in the divorce action only if they have conspired with one spouse to defraud the other spouse of a property interest.[22]

In this case, plaintiff does not allege that one of the Tituses defrauded the other. She alleges instead that the property distribution was fraudulent only with respect to her, a third party to the divorce.

Plaintiff's motion to intervene was based on MCR 2.209(A)(3), which allows an intervention of right in cases in which the intervenor's interests are not adequately represented by the parties.[23] The court rule would otherwise have

---

[21] *Yedinak v Yedinak*, 383 Mich 409, 413; 175 NW2d 706 (1970). In *Yedinak*, the divorce court allowed the defendant husband's brothers to be joined as parties in the divorce. It placed an equitable lien on the property to secure the payment of money the husband was alleged to have orally promised to his brothers. A majority of this Court reversed, reasoning that the creditor brothers had an adequate remedy at law to secure a judgment against their debtor brother. *Id*. at 414-415. The divorce court could not exercise its equitable powers in contravention of its limited statutory authority. *Id*. at 415.

[22] *Berg v Berg*, 336 Mich 284, 288; 57 NW2d 889 (1953).

[23] MCR 2.209(A)(3) states that a person has the right to intervene

when the applicant claims an interest relating to the property or transaction which is the subject of the action and is so situated that the disposition of the action may as a practical matter impair or

(continued…)

applied in the divorce because neither of the Tituses adequately represented plaintiff's interest as a potential creditor. However, the rule did not apply because the creditor sought to intervene in a divorce action in which the court did not have statutory jurisdiction to decide the intervenor's rights. Court rules cannot establish, abrogate, or modify the substantive law.[24]

In *Yedinak v Yedinak*, we addressed this same issue in the context of the court rules of permissive and necessary joinder. The majority in *Yedinak* found that nothing in these rules gave the divorce courts "power to disregard statutory provisions pertaining to divorce and to litigate the rights of others than the husband and wife."[25] The same reasoning applies here. The divorce court properly denied plaintiff's motion to intervene in the divorce proceedings, and plaintiff correctly concluded that an appeal from the denial order would have been futile.

When it denied plaintiff's motion to intervene, the divorce court opined that the Tituses' property settlement was not fraudulent because it achieved an equitable division between the spouses. The judge opined:

---

(…continued)
impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

[24] *Shannon v Ottawa Circuit Judge,* 245 Mich 220, 222-223; 222 NW 168 (1928).

[25] *Yedinak*, 383 Mich at 414.

The problem with the Intervenor/Petitioner's position is that it presumes fraud due to what may appear to be an uneven or inequitable distribution of marital assets to the Divorce/Plaintiff. If the husband were not incarcerated, and/or not incarcerated for a significant period of time, then the argument of fraud may have more weight. However, in the present case, it is very likely that had the divorce case gone to trial, that this Court would have granted most of the property to Ms. Titus simply based on the fact that her husband will be incarcerated for a significant period of time.

Swabash argues that plaintiff's failure to appeal the denial of plaintiff's motion caused the divorce court's decision that no fraud existed to have the preclusive effect of either res judicata or collateral estoppel. But these doctrines are inapplicable here. The creditor's right to relief under the UFTA was not raised in plaintiff's motion to intervene in the divorce proceeding, nor could it have been granted if raised.

The doctrine of res judicata bars a subsequent action when "(1) the first action was decided on the merits, (2) the matter contested in the second action was or could have been resolved in the first, and (3) both actions involve the same parties or their privies."[26] The doctrine bars all matters that with due diligence should have been raised in the earlier action.[27] Plaintiff did not raise her claim for UFTA relief in her motion to intervene, nor was she required to do so, given that the divorce court lacked the authority to consider it.

---

[26] *Dart v Dart,* 460 Mich 573, 586; 597 NW2d 82 (1999).

[27] *Id.*

11

Collateral estoppel is also inapplicable. That doctrine requires that (1) a question of fact essential to the judgment was actually litigated and determined by a valid and final judgment, (2) the same parties had a full and fair opportunity to litigate the issue, and (3) there was mutuality of estoppel.[28] The essential issue in the motion to intervene was whether a third party could be allowed to claim that fraud was perpetrated against her in the divorce proceeding.

Once the divorce court decided that it had no jurisdiction to grant the motion to intervene, it could not reach the merits of plaintiff's claim. Thus, plaintiff had no opportunity to litigate the issue of fraud. Because no hearing was held on this issue, it cannot be said that the issue was fully and fairly litigated. Moreover, the issue whether relief under the UFTA was available, the only issue relevant to this appeal, was not even raised in the motion to intervene. Consequently, the divorce court did not resolve the issue whether the Tituses' property distribution was inequitable with respect to plaintiff under the UFTA.

In summary, we hold that plaintiff's failure to appeal the order denying her motion to intervene in the Tituses' divorce had no preclusive effect on her claim for relief under the UFTA.

### B. THE LIMITED NATURE OF UFTA RELIEF

The Court of Appeals correctly concluded that MCR 2.613(B) prevented the trial court in the wrongful death case from setting aside or voiding the divorce

---

[28] *Storey v Meijer, Inc*, 431 Mich 368, 373 n 3; 429 NW2d 169 (1988).

12

judgment entered by the family division of the circuit court.[29] It accurately noted, as well, that MCR 2.613(B) does not prevent a court such as the court in the wrongful death case from granting relief under the UFTA.[30] The dissenting judge concluded that the Court of Appeals in effect allowed plaintiff to "recover any 'marital assets' by way of a collateral attack on a valid divorce judgment."[31]

The UFTA specifically provides for avoiding a fraudulent transfer or attaching a particular fraudulently transferred asset.[32] Relief under the UFTA

---

[29] MCR 2.613(B) states:

A judgment or order may be set aside or vacated, and a proceeding under a judgment or order may be stayed, only by the judge who entered the judgment or order, unless that judge is absent or unable to act. If the judge who entered the judgment or order is absent or unable to act, an order vacating or setting aside the judgment or order or staying proceedings under the judgment or order may be entered by a judge otherwise empowered to rule in the matter.

[30] *Estes,* 273 Mich App at 367-369.

[31] *Id.* at 386 (O'Connell, P.J., dissenting).

[32] MCL 566.37 provides:

(1) In an action for relief against a transfer or obligation under this act, a creditor, subject to the limitations in [MCL 566.38], may obtain 1 or more of the following:

(a) Avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim.

(b) An attachment against the asset transferred or other property of the transferee to the extent authorized under section 4001 of the revised judicature act of 1961, 1961 PA 236, MCL 600.4001, and applicable court rules.

(continued…)

13

determines only the creditor's right to fraudulently transferred property.[33] The court in a UFTA action would transfer directly to the creditor any property interest that would have been awarded to the debtor in the divorce action but for the parties' fraud. Hence, the relief granted would not affect the validity of the divorce judgment or provisions of the judgment such as child custody.

### C. UFTA RELIEF DISTINGUISHED FROM A COLLATERAL ATTACK ON THE VALIDITY OF THE DIVORCE JUDGMENT

Relief under the UFTA should be distinguished from a collateral attack on the validity of the divorce judgment itself. Challenges to the validity of a divorce typically are premised on alleged violations of the various statutory requirements

---

(…continued)

      (c) Subject to applicable principles of equity and in accordance with applicable court rules and statutes, 1 or more of the following:

      (*i*) An injunction against further disposition by the debtor or a transferee, or both, of the asset transferred or of other property.

      (*ii*) Appointment of a receiver to take charge of the asset transferred or of other property of the transferee.

      (*iii*) Any other relief the court determines appropriate.

      (2) If a creditor has obtained a judgment on a claim against the debtor, the creditor, if the court so orders, may levy execution on the asset transferred or its proceeds.

[33] See *Ocwen Fed Bank, FSB v Int'l Christian Music Ministry*, 472 Mich 923 (2005).

14

for divorce, such as the residency requirement and the waiting period.[34] These are jurisdictional requirements.[35] Judgments may be attacked both directly and collaterally for lack of jurisdiction. However, this Court has been loath to invalidate divorce judgments on the urgings of third parties when neither spouse challenged the validity of the divorce in a direct appeal.[36] Furthermore, the Court has refused to invalidate divorces on the basis of third-party allegations of nonjurisdictional irregularities in the divorce proceedings.[37]

This line of cases is distinguishable from the instant case because relief under the UFTA does not invalidate the divorce judgment itself. Furthermore, an independent action for relief under the UFTA is not premised on any irregularity

---

[34] In *Couyoumjian v Anspach*, 360 Mich 371, 374-375, 386; 103 NW2d 587 (1960), the plaintiffs alleged that the defendant attorney had misrepresented his client's residence in a divorce proceeding. In that proceeding, the court awarded the client property that the client's husband had earlier conveyed to plaintiffs. In *Jackson City Bank & Trust Co v Fredrick*, 271 Mich 538; 260 NW 908 (1935), the estate of the defendant's second husband attempted to set aside real property conveyances by the second husband to the defendant and him as tenants by the entirety. The plaintiff claimed that the defendant's divorce from her first husband was invalid because the court entered the divorce judgment before the applicable waiting period had expired.

[35] *Stamadianos v Stamadianos*, 425 Mich 1, 6-7; 385 NW2d 604 (1986).

[36] *Jackson City Bank*, 271 Mich at 544, 548.

[37] In *Pettiford v Zoellner*, 45 Mich 358, 361; 8 NW 57 (1881), the decedent's child by a prior marriage sought to eject the decedent's widow from the couple's residence. The Court refused to invalidate the couple's divorces from their former spouses on the basis of allegations of irregularities in the affidavits supporting service by publication.

15

in the divorce proceedings. It is premised on the divorce court's lack of statutory authority to conduct a UFTA analysis within the divorce proceeding.

### D. UFTA RELIEF DISTINGUISHED FROM A COLLATERAL ATTACK ON A LIFE INSURANCE PROVISION IN THE DIVORCE JUDGMENT

The decision on which the Court of Appeals dissent relied when stating that divorce judgments are not generally subject to third-party collateral attacks[38] derived from a different line of cases. Those cases dealt specifically with life insurance provisions in divorce judgments.

Prominent among them is *Kasper v Metro Life Ins Co*.[39] *Kasper* involved a dispute over life insurance proceeds between the decedent's father and the decedent's ex-wife as guardian of the couple's son. The ex-wife contended that, under the divorce judgment, the couple's son was to be the designated beneficiary of the decedent's life insurance policy. After the divorce judgment was entered, the decedent had named the decedent's father as the policy's beneficiary. The father argued that the divorce court had no jurisdiction to adjudicate the rights of the couple's son, a third party, within the divorce proceeding. We held that, although the divorce court could not make a third party the beneficiary of a life insurance policy, it could ratify the parties' agreement to that effect.[40] Thus, it was

---

[38] *White v Michigan Life Ins Co*, 43 Mich App 653; 204 NW2d 772 (1972).

[39] *Kasper v Metro Life Ins Co,* 412 Mich 232; 313 NW2d 904 (1981).

[40] *Id*. at 254-255.

not the divorce court but the parties to the divorce who decided their son's right to receive life insurance proceeds under the policy.

In denying the right of the decedent's father to claim the proceeds as a later-designated beneficiary in *Kasper*, we noted that the court's authority to enforce the spouses' agreement was "predicated upon our settled rule that one who has partaken of the fruits of a divorce decree cannot be heard to question the jurisdiction of the court which rendered it."[41] We also quoted the following passage from the Court of Appeals decision in *Krueger v Krueger*, which dealt with the life insurance provision in a divorce judgment:

> It is also important to note that the person challenging the divorce judgment and the underlying agreement was not a party to it. Under the circumstances it would be improper to allow this divorce settlement to be collaterally attacked after the husband has accepted all the benefits which he could obtain under it, but relieving him of his obligation.[42]

The proposition that a third party cannot collaterally attack a divorce judgment also occurred in earlier Court of Appeals cases dealing with life insurance provisions in divorce judgments. One of these, *White v Michigan Life Ins Co,* is the case cited in the Court of Appeals dissent.[43] Viewed in context, the

---

[41] *Id*. at 255.

[42] *Krueger v Krueger,* 88 Mich App 722, 725-726; 278 NW2d 514 (1979).

[43] *White* was decided under an earlier version of MCL 552.101, which, at the time, provided that an insurance policy was payable to the decedent's estate "unless otherwise ordered" in the divorce judgment. The Court of Appeals interpreted this provision as giving authority to the divorce court to order the husband to name the couple's children as the principal beneficiaries of his

(continued…)

17

prohibition against third-party attacks on life insurance provisions in divorce judgments is based on the premise that they are an improper means of challenging the provisions' validity. The spouse who was ordered, or who promised, to designate a certain beneficiary was a party to the divorce proceedings. That spouse could have challenged the validity of the judgment's life insurance provision on direct appeal. A third-party collateral attack on the provision would be inappropriate for that reason.

This line of cases should be distinguished from cases involving a creditor's right to relief under the UFTA. A creditor is not a party to a divorce proceeding and cannot directly appeal a divorce judgment. A creditor's right to relief under the UFTA is not affected by the fact that the debtor can appeal the property distribution in the divorce judgment. If a debtor agrees to a transfer of substantially all the marital assets in order to defraud a creditor, he or she cannot

---

(…continued)

insurance policy. The husband did not do so. At his death, his second wife was the sole beneficiary of his life insurance policies. The Court of Appeals stated the general proposition that a "divorce judgment may not be collaterally attacked." *White*, 43 Mich App at 657. It then interpreted the divorce judgment to conclude that the second wife was entitled to insurance proceeds only to the extent that the decedent purchased additional insurance after the divorce. *Id*. at 658.

An earlier case decided under the same version of the statute also relied on the proposition that "the validity of an unappealed decree of divorce may not be attacked by third parties except for lack of jurisdiction." *Binben v Continental Cas Co*, 9 Mich App 97, 100-101; 155 NW2d 883 (1967). The Court concluded that the decedent's second wife was not entitled to life insurance proceeds under the clear language of the divorce judgment. The judgment had ordered the decedent to name his minor children as his beneficiaries.

18

be expected to appeal that transfer. Neither can a creditor appeal in such a case. Given that a creditor is precluded from intervening in a divorce proceeding, the only way in which the creditor can raise a UFTA claim is in a separate action. [44] A creditor's request for relief under the UFTA in a separate proceeding is not an impermissible collateral attack on the divorce judgment.

The Court of Appeals correctly concluded that Swabash should be joined in the wrongful death action. She is both a "person claiming adversely to the judgment debtor" in that action under MCL 600.6128(2) and a necessary party to plaintiff's claim for UFTA relief under MCR 2.205(A). [45]

## V. CONCLUSION

---

[44] We note that courts in other states have allowed UFTA relief under a fraud exception to the prohibition against collateral attacks on judgments. In *Greeninger v Cromwell*, 140 Or App 241, 246; 915 P2d 479 (1996), the court reasoned that a fraudulent transfer under the UFTA constitutes extrinsic fraud because it is collateral to the merits of the case. The court held that an attack on such a transfer fell under the extrinsic fraud exception to collateral attacks on judgments. In *Dowell v Dennis*, 998 P2d 206, 212 (Okla Civ App, 1999), the court relied on select sections of Corpus Juris Secundum to hold that a third party whose interests have accrued beforehand may attack a divorce judgment on the ground of fraud "regardless of whether such attack is labeled 'collateral' or 'direct.'" We take no position on the validity of this alternative approach. Rather, we conclude that a creditor's claim under the UFTA is not an impermissible collateral attack on a divorce judgment because (1) the divorce court has no jurisdiction to determine the rights of a creditor and (2) a creditor cannot appeal a divorce judgment.

[45] *Estes,* 273 Mich App at 383-386.

19

We hold that the UFTA applies to the transfer of property in a divorce judgment that incorporates a property settlement agreement. Property that is held as tenants by the entirety is not subject to process by a creditor holding a claim against only one spouse. Such property is not an "asset" under the UFTA. Therefore, the distribution of such property in a divorce judgment is not a "transfer" for purposes of the UFTA.

Because the validity of the UFTA claim in this case was not properly before the Court of Appeals, we vacate that portion of the Court's judgment discussing the badges of fraud listed in MCL 566.34(2).

The trial court should have granted plaintiff's motion to join Swabash in the supplemental proceedings to the wrongful death action. Swabash is a person claiming adversely to the judgment debtor, Titus, under MCL 600.6128(2) and a necessary party to plaintiff's claim for UFTA relief under MCR 2.205(A).

Plaintiff's claim for relief under the UFTA brought in the wrongful death action does not constitute a collateral attack on the divorce judgment. The relief plaintiff sought in the wrongful death action could not vacate the divorce judgment. It could only affect plaintiff's right to property fraudulently transferred to Swabash pursuant to the judgment. It could allow avoidance of a fraudulent transfer or attachment of a fraudulently transferred asset.

We also hold that the divorce court properly denied plaintiff's motion to intervene in the Tituses' divorce action. An appeal of that denial would have been

20

futile. Plaintiff was a third party to the action. A third party can be joined in a divorce action when fraud is alleged only if he or she has conspired with one spouse to defraud the other of a property interest. That did not occur here. The divorce court's determination was of the equities between the spouses. The court did not consider whether the transfer of assets envisioned in the property settlement agreement constituted a fraudulent transfer with respect to creditors.

We affirm the judgment of the Court of Appeals in part, vacate it in part, and remand the case to the trial court for further proceedings in conformity with this opinion.

Marilyn Kelly
Clifford W. Taylor
Michael F. Cavanagh
Elizabeth A. Weaver
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman

21

STATE OF MICHIGAN

SUPREME COURT

JAN KAY ESTES, personal representative
of the estate of Douglas Duane Estes,

        Plaintiff-Appellee,

v                                                                          No. 133098

JEFF EDWARD TITUS,

        Defendant-Appellee,

and

JULIE L. SWABASH, formerly known as
JULIE L. TITUS,

        Appellant.

_____

KELLY, J. (*concurring*).

      I write separately to address the concern expressed during this appeal that

our decision will leave a great many divorce judgments subject to attack by

creditors, thus robbing them of finality. I believe the concern is unfounded. As I

will explain, relatively few creditors will be incentivized to bring actions under the

Uniform Fraudulent Transfer Act (UFTA) against newly divorced individuals as a

result of the Court's opinion in this case. This is because of the difficulty creditors

will encounter in surviving a motion for summary disposition.

Difficulties for creditors will exist on several fronts. First, to maintain a UFTA action, creditors must identify one or more property interests that qualify as "assets" under the act. As the unanimous opinion describes, property held as tenants by the entirety when the judgment is entered is not an asset under the UFTA unless the creditors' judgment covers both divorced individuals. Normally that property will include real estate, stocks, bonds, and promissory notes, among others. Hence, much of the marital estate will not be subject to a UFTA action.

A second difficulty creditors will encounter is stating a prima facie case alleging a transfer made with an actual intent to defraud. To state such a case, creditors must allege at least one badge of fraud under MCL 556.34(2). In the instant case, the creditor alleged several, including (1) that before the transfer was made, the debtor had been threatened with suit, (2) that the transfer the debtor made was of substantially all his assets, and (3) that the debtor become insolvent after the transfer.

By contrast, regarding most divorce cases, the only badge of actual fraud that might plausibly be alleged is that the transfer took place while the parties were "insiders" under the act.[1] In my opinion, this allegation will not survive a motion

---

[1] Creditors might also seek to avoid the dismissal of their UFTA actions by alleging only that the property distribution under a divorce judgment was not for a reasonably equivalent value. This refers to factor h under the act, MCL 566.34(2)(h). The lack of a reasonably equivalent value may be indicative of both actual and constructive fraud. MCL 566.34(1)(a) and (2), MCL 566.34(1)(b), and MCL 566.35(1). But I do not believe that UFTA actions will succeed in altering

(continued…)

for summary disposition. For the UFTA to apply, the transferee must be an insider when the transfer occurs. Although a husband and wife are insiders while married, they normally cease to have that status when the divorce judgment is entered. And it is only when the judgment is entered that the transfer of property takes place, assuming, of course, that the individuals do not exchange the property beforehand.

A more thorough analysis follows.

AUTOMATIC INSIDER STATUS UNDER THE MICHIGAN UFTA

The UFTA's definition of "insider" includes a relative of the debtor.[2] The definition of "relative," in turn, includes a spouse.[3] Consequently, spouses are automatic insiders under the UFTA.

_____

(…continued)
many property distributions on the basis of this factor alone. The courts have not developed standards for determining what constitutes a reasonably equivalent value in divorce cases. Clearly, many intangible or indirect benefits are involved in the property distributions in these cases. It is usually very difficult to show that the value of the consideration received by the debtor was not reasonably equivalent to the value of the asset transferred. Until standards are developed, creditors will be hard-pressed to demonstrate actual fraud using this factor by itself. Moreover, most property settlements are unlike the one in this case, in which the debtor agreed that Julie Swabash should have virtually all the marital property.

[2] MCL 566.31(g) states in relevant part:

"Insider" includes all of the following:

(*i*) If the debtor is an individual, all of the following:

(A) A relative of the debtor or of a general partner of the debtor.

3

A transfer to an insider is one of the relevant factors for determining whether the transfer was made with an actual intent to defraud a creditor.[4] MCL 566.34(2), which supplies a list of such factors, states that any one may be considered to establish the intent to defraud.[5] Because insider status alone can

---

(…continued)

[3] MCL 566.31(k) states: "'Relative' means an individual related by consanguinity within the third degree as determined by the common law, a spouse, or an individual related to a spouse within the third degree as so determined, and includes an individual in an adoptive relationship within the third degree."

[4] MCL 566.34(1) states in relevant part:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation . . . .
>
> (a) With actual intent to hinder, delay, or defraud any creditor of the debtor.

The term "insider" also appears in MCL 566.35(2), the UFTA provision that deals with preferential transfers:

> A transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent.

In the instant case, plaintiff did not argue that this provision applies to a transfer of property in a divorce. The division of property in a divorce in Michigan is based on "equitable factors." *Sparks v Sparks*, 440 Mich 141, 159; 485 NW2d 893 (1992), citing *Johnson v Johnson*, 346 Mich 418, 431; 78 NW2d 216 (1956). Thus, it is doubtful that the preferential-transfer provision of the UFTA, based as it is on a creditor-debtor model, can be applied to the typical distribution of property in divorce.

[5] MCL 566.34(2) provides:

(continued…)

4

automatically establish fraudulent intent, if all newly divorced spouses were automatic insiders under the UFTA, creditors could jeopardize the finality of many divorce judgments. I agree with the argument of the Family Law Section of the State Bar of Michigan in its brief amicus curiae that this could not have been the Legislature's intent.

---

(…continued)

In determining actual intent under subsection (1)(a), consideration may be given, among other factors, to whether 1 or more of the following occurred:

(a) The transfer or obligation was to an insider.

(b) The debtor retained possession or control of the property transferred after the transfer.

(c) The transfer or obligation was disclosed or concealed.

(d) Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit.

(e) The transfer was of substantially all of the debtor's assets.

(f) The debtor absconded.

(g) The debtor removed or concealed assets.

(h) The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred.

(i) The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred.

(j) The transfer occurred shortly before or shortly after a substantial debt was incurred.

(k) The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

It is interesting to note that the application of the badges of fraud listed in the Michigan UFTA differs from that allowed in other states' versions of the UFTA. For example, the UFTA as adopted in New Jersey, Oregon, and Illinois does not expressly allow the use of only one factor to establish the intent to defraud.[6] Not surprisingly, in these states, courts require a "confluence" of factors indicating an actual intent to defraud.[7]

As a practical matter, a creditor will normally allege multiple badges of fraud to establish an actual intent to defraud under the Michigan version of the UFTA as well. Multiple factors were present in *Szkrybalo v Szkrybalo*, in which the Court of Appeals originally rejected the creditor's claim on the ground that it was based solely on insider status.[8] We remanded the case to the Court of Appeals to review several other badges of fraud alleged under MCL 566.34(2), specifically

---

[6] See NJ Stat Ann 25:2-26; Or Rev Stat 95.230(2); 740 Ill Comp Stat 160/5(b). The language these statutes share in common states: "In determining actual intent . . . , consideration may be given, among other factors to whether [various factors are present]." In contrast, MCL 566.34(2) provides: "In determining actual intent . . . , consideration may be given, among other factors, to whether 1 or more of the following occurred. . . ."

[7] See *In re Hill*, 342 BR 183, 199 (Bankr D NJ, 2006); see also *In re Knippen*, 355 BR 710, 732-733 (Bankr ND Ill, 2006) (citing cases for the proposition that in sufficient number, e.g., seven, the factors give rise to a presumption of fraud); *Morris v Nance*, 132 Or App 216, 223; 888 P2d 571 (1994) (reasoning that some factors can be used to infer fraudulent intent, while others can be used to infer the lack of such intent).

[8] *Szkrybalo v Szkrybalo*, unpublished opinion per curiam of the Court of Appeals, issued September 21, 2006 (Docket No. 269125).

under subdivisions c, d, h, g, and j.[9] On remand, the Court of Appeals ruled for the plaintiff. The plaintiff raised a genuine issue of material fact regarding whether the debtor-husband had made a transfer to his wife during the marriage with an actual intent to defraud his creditors. [10]

In this case, plaintiff did not base her cause of action solely on the allegation that Jeff Titus made fraudulent transfers to an insider. On remand, the trial court can consider the other badges she alleged, those in subdivisions d, e, and f, in determining whether any transfer was made with an actual intent to defraud plaintiff. Thus, in this case, whether a transfer was made to an insider is not dispositive. However, because our UFTA allows a creditor to allege a single factor, it is important to know whether a divorce judgment may be attacked solely on the ground that spouses are automatic insiders.

NEWLY DIVORCED INDIVIDUALS ARE NOT AUTOMATIC
INSIDERS UNDER THE UFTA

In determining whether a transfer under the UFTA was to an automatic insider, it is necessary to consider the parties' status at the time of the transfer.

---

[9] *Szkrybalo v Szkrybalo,* 477 Mich 1086 (2007).

[10] *Szkrybalo v Szkrybalo* (*On Remand*), unpublished opinion per curiam of the Court of Appeals, issued May 31, 2007 (Docket No. 269125).

Under MCL 552.401, the transfer of property interests in a divorce judgment occurs when the judgment is entered.[11] It is also at that time that the marriage is dissolved. The simultaneity of the two events makes it impossible for the parties to be still married at the time the transfer occurs. Because the spousal relationship evaporates at the same moment that the transfer occurs, the parties to the divorce are not automatic insiders under the UFTA.

A question arises about what importance to accord to the parties' status during the negotiation of the property settlement agreement incorporated into the divorce judgment. Virtually every property settlement agreement is negotiated while the parties are still married. However, the UFTA is concerned with the transferee's status at the time of transfer, not while the terms of the transfer are being negotiated.[12] The settlement agreement in itself is not a transfer. It is a conditional promise to transfer that has no effect until the divorce judgment is entered.

CONCLUSION

I believe that the great majority of divorce judgments will not be subjected to a UFTA action. A creditor will encounter difficulty sustaining a UFTA action

---

[11] MCL 552.401 provides in relevant part: "The [divorce] decree, upon becoming final, shall have the same force and effect as a quitclaim deed of the real estate, if any, or a bill of sale of the personal property, if any, given by the party's spouse to the party."

[12] MCL 566.34(2)(a).

8

against a newly divorced individual (1) if the property that the creditor seeks was held as tenants by the entirety at the time of divorce or (2) if automatic insider status is the creditor's only available basis for alleging fraud.


Marilyn Kelly